FRED C. BEERMAN, Plaintiff, v. CHARLES BEERMAN et al., Defendants.

W. A. MILLER, Trustee, Appellant, v. FRANK A. BEERMAN et al., Appellees.

No. 44155.

MAY 10, 1938.

Sterling Alexander, for appellant.

F. J. Lund, for appellee Frank A. Beerman.

L. C. Macgoey, for appellee Charles Beerman.

RICHARDS, J.—This suit originated on August 15, 1930, when plaintiff filed a petition in equity for the partitioning of a tract of 240 acres situated in section 16, township 88, range 26, in Hamilton county. Among the allegations in the petition were the following: That defendant Frank A. Beerman was owner of an undivided one-eighth share of said real estate; that on July 27, 1925, he executed to defendant First National Bank of Webster City a mortgage on his said share, and that the mortgage was a subsisting lien, held and owned by defendants W. A. Miller et al., as trustees of the waived assets of said bank. Original notice of the suit was served on appellant and other defendants. On November 7, 1930, defendant Frank A. Beerman filed a separate answer to the petition, admitting he owned a one-eighth share, but denying that the defendant trustees owned or held any mortgage which was a subsisting lien thereon. On November 20, 1930, the cause came on for trial, and a decree was entered in favor of plaintiff against all the defendants, including appellant, establishing the ownership of an undivided one-eighth share by Frank A. Beerman, and decreeing that the land be partitioned by sale, free and clear of any mortgage the bank or trustees might have or claim to have against the share of Frank A. Beerman, but that whatever such mortgage lien there might be upon said share should be a lien upon a one-eighth portion of the net proceeds of the sale of the land. The decree also provided that the case be continued for determination of the question, raised by the answer of defendant Frank A. Beerman to plaintiff's petition, as to whether or not defendant bank or trustees held a mortgage on his interests. On September 21, 1935, appellant W. A. Miller, the then sole trustee, filed in the partition action a pleading designated as an answer, joinder, and counterclaim. Therein he alleged that Frank A. Beerman made the mortgage to the bank to secure a note; that by inadvertence and mutual mistake made in the drafting of the mort-

gage the real estate was described therein as being in range 25, whereas it was intended by the parties to the mortgage to describe the land as being in range 26, west of the 5th P. M., Hamilton County, Iowa; that said note and mortgage were transferred to appellant as trustee of the waived assets of the bank following its closing. The prayer was that the mortgage "be reformed, by correcting the description of the real estate covered thereby to Range 26 in order to effect the true intention of the parties thereto," and be decreed to be a lien. Upon the trial of these issues the district court held against the trustee, and he has appealed.

The appeal presents for our consideration the issues involved in appellant's above-mentioned pleading, designated as an answer, joinder, and counterclaim. To that pleading answers were filed by the guardian ad litem of Frank A. Beerman, and later by himself, containing general denials and affirmative defenses, including payment, novation, and conditional delivery. These last-mentioned defenses have not been proven. Another defense, that appellant's cause of action for reformation was barred by the statute of limitations and by laches, sustained by the trial court, requires discussion.

If there was a mutual mistake, it was made in July 1925. Appellant's pleading seeking reformation was filed in September 1935. The original notice thereof was not served upon Frank A. Beerman until December 1935. If we reckon from the happening of the alleged mutual mistake, immediately after which happening it was within appellant's rights to institute a suit, it is evident that appellant's proceedings for reformation were not begun within the limited period of five years prescribed by subsection 5 of section 11007, Code 1935. But appellant makes objection to such manner of computing the five-year period, basing his objection on the claim that the period within which he could bring his action did not commence to run from the time the alleged mistake was made, but from the discovery of the mistake, on account of the provisions found in section 11010, Code 1935. It is important to note, however, that it is a part of appellant's proposition that there was no duty or burden upon him to show when he discovered the mistake, in order to avail himself of the provisions of said section 11010, which reads:

"11010. Fraud—mistake—trespass. In actions for relief

on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved.''

Directing attention to the question of the soundness of appellant's proposition that the running of the statute was extended for his cause of action, without proof by him of the date of his discovery of the mistake, an examination of section 11010 reveals that it is a composite of successive enactments. The corresponding section in the Revision of 1860 reads as follows:

''Sec. 2741. (1660.) In actions for relief on the ground of fraud as above contemplated, the cause of action will not be deemed to have accrued until the discovery of the fraud by the party aggrieved.''

This statute had reference solely to certain actions for relief on the ground of fraud. In chapter 167 of the Acts of the 13th General Assembly this section 2741 of the Revision was repealed, and the following enacted in lieu thereof:

''Sec. 9. (Sec. 2741.) In actions for relief on the ground of fraud, and in actions for trespass to property, the cause of action shall not be deemed to have accrued until the fraud or trespass complained of shall have been discovered by the party aggrieved.''

While this statute added actions for trespass to property, it is to be noted that the word ''mistake'' had not yet appeared in the process of evolution of the present section 11010, and in Higgins v. Mendenhall, 51 Iowa 135, 50 N. W. 539, it was held that the legislation enacted by the 13th General Assembly did not affect the running of the statute of limitations upon a cause of action for relief on the ground of a mistake, though undiscovered by the party aggrieved. But in Code of 1873 we find an enlargement of the scope of the previous statute, that is, the word ''mistake'' was incorporated, the section in Code of 1873 reading as follows:

''Sec. 2530. In actions for relief on the ground of fraud or mistake, and in actions for trespass to property, the cause of action shall not be deemed to have accrued until the fraud,

mistake, or trespass complained of shall have been discovered by the party aggrieved.''

Before the word ''mistake'' was put into section 2530, Code 1873, the old law, as has been above noted, by reason of the generality of its terms, at the end of a fixed period barred any cause of action in which relief was sought on the ground of mistake. The old law contained no provision for relieving the misfortune of an aggrieved party by whom the mistake had not been discovered before the fixed period had run. The new statute, section 2530, Code 1873, changed the law. The change accomplished the deliverance of litigants, seeking relief on the ground of mistake, from the harshness of an undiscriminating application of the statute of limitations. The misfortune of nondiscovery of the mistake, unmentioned by the legislature in the old law, was the thing that was sought to be relieved in the new law when the word ''mistake'' was incorporated. The relief is found in the provision that the cause of action shall not be deemed to have accrued until the mistake shall have been discovered. And it seems quite clear that this relief was intended for the one specific purpose of helping out of a dilemma those litigants who, had they appeared in court under the old law, could not have saved their rights by showing that they had not discovered the mistake within the fixed period of the statute of limitations. To such litigants, and none others, the legislature granted relief. To litigants generally no extension of time was mentioned or intended. It would seem to naturally follow that a litigant seeking to avail himself of this statute, and to be accorded this relief, should place himself in the category of those litigants under the old law whom the new law is intended to relieve; that is, he should show that he is an aggrieved litigant who did not discover the mistake. To hold that the burden of pleading and proving nondiscovery of the mistake does not rest upon the litigant relying thereon for avoidance of the statute of limitations, and to hold that the burden is upon the litigant pleading the statute of limitations, would be to infer a legislative intent that we cannot adopt; that is, an intent to weaken, beyond any necessity incidental to the purposes the legislature was accomplishing, the generally conceded legislative design that the statute of limitations be a statute of repose upon which there may be reliance. Of necessity the inclusion of ''mistake'', in Code of 1873, enabled

a litigant to lessen the effectiveness of the statute of limitations, if he shows that he did not discover the mistake. But we are unable to find in section 2530, Code 1873, or in the present section 11010, any indication of legislative intent to additionally weaken reliance by a litigant on the statute of limitations by making such reliance conditional and dependent upon such litigant being able to show at what time the opposing party discovered the mistake. If the party relying on the statute of limitations were unable to make such showing, he apparently would be amenable to an action for relief on the ground of mistake, no matter how anciently it might be claimed the alleged mistake had been made. We cannot accept this as having been reasonably within the intendment of the legislature.

■ This conclusion in no manner affects the rules laid down in this jurisdiction in actions in which relief was sought in equity on the ground of fraud, Baldwin v. Tuttle, 23 Iowa 66, Harlin v. Stevenson, 30 Iowa 371, and as in actions in which there has been a fraudulent concealment of a cause of action by the party against whom it existed. District Township v. French, 40 Iowa 601, cited in Conklin v. Towne, 204 Iowa 916, 216 N. W. 264. One reason for distinguishing cases involving fraud from those involving mistake, is that when relief is sought in equity on the ground of fraud the rule is that the statute should not begin to run until its discovery, because it ought not in conscience to run, for the conscience of the party being so affected he ought not to be allowed to avail himself of the length of time. Relf v. Eberly, 23 Iowa 467. On the other hand, when pure mistake is the ground for relief, there is no room for weighing matters of conscience against either party.

■ Turning now to the testimony with respect to the date of the discovery of the mistake by the bank, and by appellant-trustee, the bank was temporarily closed on November 30, 1926, reopening as a going concern on February 15, 1927, and continuing its business thereafter until its final closing on November 28, 1932. The reopening of the bank on February 15, 1927, was coincident with the turning over to appellant-trustee of certain assets of the bank, including an interest to the extent of about $2,900 in the note secured by the mortgage given to the bank by Frank A. Beerman. The bank continued to hold the mortgage, until June 1929. During 1925, and until the bank finally closed, one Mason was its cashier and one of its executive officers.

It was he who procured and supervised the execution of the mortgage. Mason, as appellant's witness, was asked when he first became aware that in the bank's mortgage the land was described as being in range 25 instead of range 26. He answered that he did not know it until ''probably two or three years after the bank closed, probably in 1929.'' The closing to which he was referring occurred in November 1926. In the testimony of the appellant, in his own behalf, it clearly appears that he knew of the same facts, but, following a question as to the date of the discovery by him, he answered; ''I don't remember just when I first noticed this discrepancy in the description.'' Connected with and following up this answer the witness volunteered the statement that what he was relying upon entirely was the fact that plaintiff in his petition had alleged that the mortgage was a subsisting lien. This witness also admitted that it may be he discovered the answer filed by Frank A. Beerman in November 1930, although ,in other portions of his testimony he disclaimed remembering about it. The examination he made of the petition was prior to the decree that was entered on November 20, 1930. During all this time appellant was in the abstract business in Hamilton County, noting in his abstract books the instruments affecting land titles as they were filed in the recorder's office. The Beerman mortgage was recorded on November 23, 1927. We pass the question whether under this record the trial court might not well have found that the appellant as well as the bank discovered the alleged mistake more than five years before the commencement of the procedings for reformation. What the district court did hold was that appellant had failed to successfully carry the burden of·proving that he did not discover the alleged mistake until some time within five years before commencing his proceedings, and that, in the absence of such proof, the statute of limitations had barred his action. We agree with the holding of the trial court. The cross-appeal of defendant Charles Beerman is not considered, consistently with concessions found in his argument. The decree of the district court is affirmed.—Affirmed.

SAGER, ANDERSON, KINTZINGER, HAMILTON, MITCHELL, and DONEGAN, JJ., concur.