THE SOUTHERN KANSAS RAILWAY COMPANY *et al.* v.
FLORENCE M. SHOWALTER.

No. 9302.

1. VACATED STREET—*on original public land town-site plat, reverts equally to adjoining lots though lots on one side not embraced in town-site.* In order to entitle the owner of the lots on one side of a public street to more than one-half of the street, on its vacation, it must appear that the street, or some part thereof, was at some time taken from such lots and appropriated to public use. Where a street, designated on the original plat of a town-site, located on public lands of the United States, and entered and platted by the probate judge for the benefit of the occupants, so that the title to the streets passed from the government of the United States through the probate judge to the county, is afterward vacated, the title to the land included in the street vests in the lot owners on each side in equal parts, and this in a case where the vacated street is all included within the original town-site, and the lots on one side are in a different quarter-section of land afterward platted as an addition.

2. JUDGMENT ON VERDICT—*cannot include interest on verdict computed by court without verdict data.* It is error for the court to compute interest on the amount of a verdict for a period prior to the date of its rendition and render judgment therefor, when the verdict neither includes such interest, nor affords definite data for its computation.

*Error from Sumner District Court.*
*Hon. James A. Ray, Judge.*

MODIFIED.                    OPINION FILED FEBRUARY 6, 1897.

*A. A. Hurd, O. J. Wood,* and *W. Littlefield,* for plaintiffs in error.

*A. E. Parker* and *W. W. Schwinn,* for defendant in error.

ALLEN, J.    This action was instituted by Florence M. Showalter against the Southern Kansas Railway Company and the Wichita and Western Railway Company to recover damages for the appropriation of a strip of ground 20 feet wide and 150 feet long lying

immediately south of the center line of what had been
First Street in the city of Wellington.    The plaintiff
owned the west half of Block No. 2, in Myer's Addi-
tion to the city of Wellington, which was bounded on
the north by First Street.    The Southern Kansas
Railway Company owned the lots in Block 95 in the
original town-site of Wellington, fronting on First
Street, immediately north from the plaintiff's lots.
The town-site of Wellington was laid off on public
land, and conveyed to the Probate Judge of Sumner
County as a town-site under the laws of the United
States, the south line of First Street being the south
line of the town-site.    Myer's Addition, in which the
plaintiff's property was included, was afterward
platted with the south line of First Street as the
northern boundary thereof.    Subsequently, First
Street was vacated by an ordinance of the city, the
validity of which is not questioned by either party.

The principal contention in the case is as to the
title to the vacated street.    The plaintiff claims that
one-half of it accrued and attached to her lots.    The
defendant claims that the title to the
whole of it vested in it by reason of its
ownership of the adjacent lots on the
north, and because the whole street was taken from
the original town-site of Wellington.    The first trial
of the case resulted in a judgment for the defendant.
On proceedings in error, the judgment was reversed
by this Court, and the case remanded for a new trial.
*Showalter v. S. K. Rly. Co.*, 49 Kan. 421.    It was then
held that under the proviso in paragraph 811 of the
General Statutes of 1889, which reads :

1. Vacated street
reverts to adjoin-
ing lots equally.

" That, whenever any street, avenue, alley or lane
shall be vacated, the same shall revert to the owners
of real estate thereto adjacent on each side, in pro-

portion to the frontage of such real estate, except in cases where such street, avenue, alley or lane shall have been taken or appropriated to public use in a different proportion, in which case it shall revert to adjacent lots of real estate in proportion as it was taken from them,"

each of the adjacent lot owners took one-half of the vacated street, and that the plaintiff became the owner of the strip of ground in controversy. Counsel for the plaintiffs in error challenge the correctness of this decision, and earnestly insist on a re-examination of the question. The opinion in the case was prepared by SIMPSON, C., and contains the following language :

"The view we take is strengthened by the language of the provision that seems to require that a street or alley to fall within its operation must have been taken and appropriated to public use. These words convey to the mind the idea that the street or alley must have been the product of the exercise of the right of eminent domain, rather than the ordinary act of dedication of streets or alleys by the original town-site proprietors."

The view that there can be an unequal division of the vacated street only when it has been taken by the exercise of the right of eminent domain, is vigorously combated by counsel, and if this case turned on the correctness of this expression in the former opinion, it may be that we should find great difficulty in adhering to that position ; for it is very difficult to understand why an owner who has voluntarily dedicated a part of a lot to public use, should not be as well entitled to a reversion of it, when the public use is renounced, as one who has been forced to yield a similar part of his property by the exercise of the right of eminent domain; and the payment to him of damages

therefor.    This is not the pivotal question in this case,. however, nor are we sure that it had controlling in- fluence with the Court in rendering its former deci- sion.    The language of the proviso relied on by the plaintiffs in error is, that the vacated street "shall revert to adjacent lots of real estate in proportion as it was taken from them."    First Street was never taken from the defendant's lots.    Lots 12 and 13,. which are bounded on First Street, never extended across or included any part of First Street until after the vacation.    First Street was never taken from any lots.    In platting the original town-site, First Street was taken from the south side of the whole quarter- section, and the defendant's lots were taken from the land adjoining.    It would be as apt an expression to say that lots 12 and 13 were taken from First Street, as that First Street was taken from the lots.    Each was included within the original tract covered by the town site.    The title to the street, by virtue of its dedication to public use, passed from the United States to the county.    The title to the lots passed from the same source of title to the Railway Company.    The title to the land covered by Myer's Addition must also have been derived from the com- mon source of title,— the government of the United States ; though at what date the title of the govern- ment was divested we are not informed, nor do we deem it material.    While First Street was taken from the half-section covered by the town site, it cannot fairly be said that it was taken from any lot, nor was. any one lot as originally platted diminished in size, by reason of the streets, more than another ; nor, indeed,. can it be said that any lot was of less size than it would have been had First Street never been laid off, for more lots might have been made from it.    This.

case, then, is one where a street, not taken from any
particular adjacent tract but the full title to which
passed directly from the Government of the United
States to the county for public use, has been vacated,
and the owners of adjacent lots have been by such va-
cation deprived of the advantages of a street.   The
mere fact that a section line chanced to correspond
with the south side of the street, has little bearing on
the question under consideration.   People buying
and improving city property usually buy with refer-
ence to streets and alleys which are visible, and
directly affect the value of the property, and pay
little or no heed to section lines.   First Street, be-
fore its vacation, was open and available to the
plaintiff for use in connection with her property.
On its vacation, the title to one-half of it vested in
the plaintiff, and the other half in the defendant, as
the owners of the adjacent lots on each side ; the land
not having been taken and appropriated to public use
from the lots on either side.

Various questions on the admission of testimony,
the instructions to the jury, and the measure of dam-
ages, are discussed in the brief.   We have examined
all of them, but find no substantial error in any of
these particulars ;n or any question requiring discus-
sion in the opinion.

One other matter remains to be considered.   The
jury rendered the following verdict :

‘‘ We, the jury, impaneled and sworn in the above-en-
titled case, do upon our oaths find for the plaintiff, and
assess the value of that part of the plaintiff's property
2. Error for court     taken and appropriated by the defendants
to compute in-     at the time it was taken and the damage
terest, when.     resulting to her remaining property, de-
scribed in her petition, by reason of the appropriation

thereof, exclusive of interest, at the aggregate sum of $3,100.''

On this verdict the Court rendered judgment for $4,374, having added $1,274 for interest. This was erroneous. Section 288 of the Code of Civil Procedure provides: ''When, by the verdict, either party is entitled to recover money of the adverse party, the jury, in their verdict, must assess the amount of recovery.'' Under this it has been held that interest must be computed by the jury and included in the verdict (*Ed'l Ass'n v. Hitchcock*, 4 Kan. 36; *Wilson v. Means*, 25 id. 83), or, as held in the cases of *Citizens' Bank v. Bowen*, 25 Kan. 117, and *Mills v. Mills*, 39 id. 455, such data must be given in the verdict as will enable the court to make the computation from the verdict alone; otherwise, no interest can be included in the judgment.

The judgment will be modified by striking out the interest, and the District Court is directed to enter judgment on the verdict, as of the day of its rendition, for $3,100, to bear interest at the rate of six per cent. from that time. The judgment so modified will stand affirmed.

All the Justices concurring.