No. 29,333.

MICHAEL SHOEN, *Appellant*, v. JENNIE BAKER, *Appellee*.

(287 Pac. 233.)

Opinion filed May 3, 1930.

*Carl Van Riper,* of Dodge City, for the appellant.

*E. C. Minner,* of Dodge City, for the appellee.

The opinion of the court was delivered by

HUTCHISON, J.: This is an action to quiet title to the east half of a vacated avenue which lies between the lots of plaintiff and de-

fendant, the plaintiff claiming the reversion of the entire avenue when vacated and the defendant claiming the east half, which is adjacent to her lot. The trial court decided in favor of the defendant, dividing the avenue equally between plaintiff and defendant, and plaintiff appeals.

The agreed statement of facts on which the case was tried was, in substance, as follows: In 1885 one Louisa Olive owned a tract of land which she platted and named Olive's addition to Dodge City, the east thirty feet of which tract she dedicated as a street named Hardesty avenue. The east lot in her addition was lot 2 in block 20, and is owned by appellant. In the year 1916 a tract of land lying immediately east of Hardesty avenue was platted and named Hardesty addition, and the west line of Hardesty addition was and is the east line of said Hardesty avenue. The land platted into Hardesty addition was not owned by Louisa Olive. Appellee is the owner of the west lot in Hardesty addition, being lot 7 in block 1, and this lot is immediately east of and adjacent to Hardesty avenue, and directly opposite lot 2, block 20, Olive addition, owned by appellant. In 1921 Hardesty avenue was vacated.

The appellant claims the reversion of the entire avenue because it was owned and dedicated by his grantor, and the appellee claims each abutting owner is entitled to one-half of it when vacated because it was not taken from the appellant's lot any more than from appellee's lot, not being taken from either.

The controversy involved must be determined by the construction of a proviso in R. S. 14-423, which is as follows:

"*And provided further,* That whenever any street, avenue, alley or lane shall be vacated, the same shall revert to the owners of real estate thereto adjacent on each side, in proportion to the frontage of such real estate, except in cases where such street, avenue, alley or lane shall have been taken and appropriated to public use in a different proportion, in which case it shall revert to adjacent lots of real estate in proportion as it was taken from them."

The question is, Does the original ownership and dedication of the land used for the avenue bring the case within the exception stated in the statute, where it is to revert in proportion to what was taken from each, instead of the usual division of one-half to each?

It is urged by appellee that the land for this avenue was never "taken" in the commonly accepted use of that word, but that it was dedicated or donated by Mrs. Olive to public use when she filed her plat in 1885; that it was a part of the entire tract of land embraced

in the plat and was not "taken" from the lots adjacent thereto in her .plat; that the lots could be as well said to be "taken" from the .avenue as *vice versa,* and that the size of appellant's lot was not diminished by reason of this thirty-foot strip on the east edge of her land being designated as an avenue. In this connection it must be observed that the land on the east side of the avenue never belonged to Mrs. Olive, nor to the appellant herein.

The undoubted primary conception of "taking" is to seize, capture, lay hold of or secure, but it is susceptible of a wider range of meaning not limited to being obtained by force or superior power as to choose, accept or assume. (Webster's Dictionary.)

This question, under a somewhat similar state of facts, was twice before this court in the case of *Showalter v. S. K. Rly. Co.,* which is reported in 49 Kan. 421, 32 Pac. 42, and *Railway Co. v. Showalter,* 57 Kan. 681, 47 Pac. 831. In the first case a very restricted meaning was given by a divided court to the word "taken," limiting it in effect to a taking by eminent domain. On the second hearing the court declined to .adhere to so limited and specific a definition when it said, on page 683:

"The view that there can be an unequal division of the vacated street only when it has been taken by the exercise of the right of eminent domain is vigorously combated by counsel, and if this case turned on the correctness of this expression in the former opinion, it may be that we should find great difficulty in adhering to that position."

In the same paragraph the court on the second hearing continued by comparing the reasonable rights of reversion authorized by our statute after an appropriation to public use by voluntary dedication with those where the taking was by the process of eminent domain, as follows:

"For it is very difficult to understand why an owner who has voluntarily dedicated a part of a lot to public use should not be as well entitled to a reversion of it, when the public use is renounced, as one who has been forced to yield a similar part of his property by the exercise of the right of eminent domain, and the payment to him of damages therefor." (p. 683.)

We think this is a conservative, safe and reasonable construction of the statute under consideration and that a voluntary dedication of an avenue is such a taking of the land used for that purpose as to bring it within the exception of the statute whereby it must revert in the proportion in which it was taken, or appropriated.

But it is .urged by appellee that on the second hearing of the Showalter case, *supra,* it was decided that the street should revert

one-half to the abutting lot owner on each side thereof, and the final result should control in this case rather than the comment on the earlier decision. But the court after this comment and definition stated that such was not the pivotal question in that case, and held that as the street was platted by the probate judge on government land the title to the land used for the street had passed directly from the government to the county and that neither the plaintiff in that case nor his grantors ever owned the land used for the street, and consequently it was not taken and could not in any sense of the word have been taken from him or them, nor from his or their adjacent lots.

The situation in this case is very different. The land used for this avenue was owned by Mrs. Olive when she dedicated it to public use. In the Showalter case the street prior to its vacation had no owner except the government and the county. Showalter stood no closer to them than did the owner of the lot on the opposite side of the street.

Something is said in the briefs about the county having only an easement in the avenue, but there can be no question about the fee to the avenue being in the county. That feature was considered in the first Showalter case, *supra* (p. 432), and has been so held in numerous other decisions of this state.

We conclude that the appellant owner of the adjacent lot on the west, and whose grantor originally owned and voluntarily dedicated the entire avenue, comes within the exception noted in R. S. 14-423, and is entitled, when the avenue is vacated, to a reversion of the entire width thereof.

This conclusion is in harmony with the common-law rule, which is still in force in this state except as modified by constitutional and statutory law (R. S. 77-109). That rule is the returning of land to the donor or grantor after the particular use or estate is ended. This has been generally held to have applied to dedicated streets when vacated.

"As a rule where land is dedicated to á public use it reverts to the dedicator when the intended use becomes 'impossible or is abandoned." (23 R. C. L. 1101. See *Tousley v. Galena M. & S. Co.*, 24 Kan. 328; *Bowers v. Atchison, T. & S. F. Rly. Co.*, 119 Kan. 202, 237 Pac. 913.)

The judgment is reversed and the cause remanded with instructions to render judgment for appellant, quieting his title to the east half of the avenue in question.