No. 36,499

LILLIE LUTTGEN, *Appellant,* v. EVELYN A. ERGENBRIGHT and ROBERT M. ERGENBRIGHT, *Appellees.*

(166 P. 2d 712)

Opinion filed March 9, 1946. Affirmed.

*Austin M. Cowan,* of Wichita, argued the cause, and *W. A. Kahrs, Robert Nelson* and *H. F. Hudson,* all of Wichita, were on the briefs for the appellant.

*Douglas E. Shay,* of Wichita, argued the cause, and *Harry C. Castor, Justus H. Fugate* and *J. Paul Jorgenson,* all of Wichita, were on the briefs for the appellees.

The opinion of the court was delivered by

THIELE, J.: This was an action to eject defendants from certain real estate and to quiet the plaintiff's title against the defendants.

The real estate involved is a part of a vacated alley in the city of Wichita. The petition contains extended allegations with reference to the creation and vacation of the alley and the conveyance of lands abutting the same, as well as legal results arising therefrom. Attached to the petition are exhibits consisting of copies of plats and dedications, conveyances of title and an ordinance of the city of Wichita. The pertinent allegations of facts are summarized.

Henry Schweiter, Sr., owned a tract of land in the northwest part of the southwest quarter of section 27, township 27 south, range 1 east, in Sedgwick county. On April 10, 1920, he filed a plat of a strip 165 feet wide east and west and 1,477.5 feet north and south as Schweiter's Fourth Addition to Wichita, which will be referred to as the Fourth Addition. This plat showed a street thirty feet wide along the west side, and an alley fifteen feet wide on the east side, dedicated to public use. The lots were each 120 feet long east and west. The north and west lines of the addition were the north and west lines of the described quarter section, and at the time of filing the plat the east line of the alley was the east city limits.

On May 8, 1925, Mr. Schweiter conveyed all of the lots in the Fourth Addition, with all the tenements, hereditaments and appurtenances to the Schweiter Investment Company which is hereafter referred to as the company. Fifteen days later and on May 23, 1925, Mr. Schweiter conveyed to the company a tract of eighty acres in the above quarter section "except the west 165 feet." The land conveyed was not then within the city. The exact description in this deed is not set forth, but we are told that the west 165 feet is the land included in the Fourth Addition.

On February 6, 1928, the city of Wichita passed an ordinance vacating the alley in the rear of all the lots in the Fourth Addition, under the terms of which it relinquished title to the abutting property in equal proportion but reserved the right to maintain public utility service thereon. (It may here be noted that there is no contention that this ordinance as a whole is invalid.)

On December 30, 1932, the company conveyed lots 58 and 60 in the Fourth Addition to the plaintiff, the deed containing no reservation or exception.

On February 16, 1938, the company filed its plat of lands lying immediately east of the east line of the above-mentioned alley as

Schweiter's Sixth Addition, hereafter called the Sixth Addition, and on the same day the platted lands were included within the city limits.

On October 18, 1939, the company conveyed lot 2, block 5, in the Sixth Addition to defendants' predecessors in title. (It may here be noted that the lot conveyed by this deed was immediately east across the vacated alley from the two lots earlier conveyed to the plaintiff.) In the spring of 1942 defendants' predecessors in title fenced in and made a part of their holding the east half of the alley lying to the west of their lot.

On July 3, 1944, the company quitclaimed to plaintiff all that part of the vacated alley lying east of her lots.

The prayer of the petition was that plaintiff be declared to be the owner of the east half of the vacated alley and entitled to the exclusive possession thereof and that the defendants be ejected therefrom and that plaintiff's title be quieted as against the defendants.

The defendants' general demurrer to the petition was overruled and they filed an answer admitting the factual matter pleaded, and denying that plaintiff was the owner of the land in dispute, and in detail denied certain allegations of legal effects set forth in the petition. They also set forth a counterclaim which alleged they were the owners of and in possession of the disputed tract and that when the alley was vacated the company owned the property abutting on each side. Other allegations are in a sense repetition of allegations in the petition, and of defendants' claim of title. They prayed that plaintiff take nothing and their title be quieted.

Plaintiff filed a reply and answer to the counterclaim in which she denied every allegation adverse to her rights; that the land in dispute was a part of defendants' lots; that the city ever owned the alley or was able to relinquish it to abutting owners in equal proportions or that the east half of the alley was ever any part of the Sixth Addition.

The cause came on for trial on March 28, 1945, and according to the journal entry was submitted to the court upon the allegations of the pleadings, and the exhibits attached to the pleadings were offered and received in evidence, at which time the court heard argument. On June 29, 1945, the cause came on for further argument and following that the trial court found that defendants should have judgment. Thereafter the plaintiff filed a motion for a new

trial which was denied, and she appealed to this court. The specifications of error are that the trial court erred in rendering judgment against the plaintiff, in rendering judgment for the defendants, in rendering judgment against the plaintiff when it had previously overruled a demurrer to her petition and in not sustaining her claim of *res judicata.*

We note that in the appellant's abstract is a certificate of no evidence of certain stated matters. Without specification we think each of the five items mentioned refers to legal conclusions to be drawn from the pleadings or the admitted documents.

Appellant contends that the order of the trial court made February 14, 1945, overruling defendants' demurrer to her petition, not having been appealed from, was a judgment binding on the defendants thereafter. Although the journal entry of judgment does not so state, in the abstract are included some remarks by appellant's counsel from which it may be inferred that when the cause was submitted on March 28, 1945, the question of *res judicata* was orally raised, and that it was again raised orally at the second argument on June 29, 1945, there is no showing that at either time did appellant make any request to amend her reply and answer to defendants' answer and counterclaim to raise the question. Without repeating verbatim the remarks made, at the second hearing appellant's counsel there recognized that there could be waiver but said that there had been no waiver. If the trial court made a specific ruling, it is not shown and the matter proceeded, resulting in the judgment of which complaint is made.

Appellant directs our attention to *Stimec v. Verderber,* 152 Kan. 582, 106 P. 2d 708, and to some of the cases cited therein, holding that a ruling *sustaining* a demurrer to a petition may form the basis for a defense of *res judicata,* and to language found in *In re Estate of Bourke,* 159 Kan. 553, syl. ¶ 2, 156 P. 2d 501. In the latter case appellant's proceeding in the probate court had been decided adversely to him. He did not appeal. Three years later he attempted to reassert the claim originally made in the probate court and upon allegation in an answer raising the question it was held the matter was *res judicata.* Appellant contends the same rule applies to an order overruling a demurrer as to one sustaining it, but she cites no authority in support of the contention, and it need not be decided for she also recognizes that even the sustaining of a demurrer is not a bar where the pleader adds to his pleading a new and essential

fact so that it is no longer open to attack. She contends that the answer filed by the defendants raised no question of fact and the question of law was settled by the ruling on the demurrer. It may be observed that this action was one in ejectment where the only answer necessary to raise an issue is a general denial (G. S. 1935, 60-2002), and that in this case there is a denial of appellant's right of title and possession and an assertion of defendants' right. Further than that, it is the generally accepted rule that if a party is to rely on *res judicata* he must plead it. (See, e. g., *Wollard v. Home State Bank,* 121 Kan. 474, 247 Pac. 868; *Kirwin v. McIntosh,* 151 Kan. 289, 291, 98 P. 2d 160; 30 Am. Jur. 983, § 255; 34 C. J. 1055, § 1491; annotation 120 A. L. R. 55.) Appellant also seeks to make some point that when it filed its reply and answer, the time for appeal from the ruling on the demurrer had not expired. The judgment existed, however. Later appellant had an ample opportunity to amend and plead *res judicata* and did not do so. Under the circumstances of this case we think the court committed no error in not allowing a defense of *res judicata.*

The question of primary importance in this case is the legal effect following the vacation of the alley. When Schweiter filed his plat and dedication, it showed the alley in question and that it was dedicated to public use. Under the law of this state the fee title of the alley vested in the county in trust for the use of the public, and being located within a city, the lawful possession, dominion and control was vested in the city, all by operation of law. (*Douglas County v. City of Lawrence,* 102 Kan. 656, 171 Pac. 610.) The manner in which the alley could be vacated and the title disposed of was the subject of control by the state legislature. Wichita is a city of the first class and at the time it passed the ordinance vacating the alley it did so under R. S. 1923, 13-401, which gave the governing body the power to pass ordinances not repugnant to the constitution and laws of this state for the purposes specified in that article of the statutes, and R. S. 1923, 13-443, provided, insofar as we need notice it, that the city had power. . . .

"To vacate and close any street or alley or portion thereof; and when any street or alley is vacated it shall revert to the owners of land thereto adjoining on each side, in proportion to the frontage of such land, except in cases where such street or alley may have been taken for public use in a different proportion, in which case it shall revert to the adjoining land in the same proportion as it was taken from it. . . ."

The present controversy grows out of the force and effect to be given the provision for reversion—in general appellant contending the alley was taken entirely from the platted land, and on vacation the land included within the alley reverted to the lots in the Fourth Addition, and the appellees contending that the alley was taken from lands owned on both sides by Henry Schweiter, Sr., at the time of the dedication of the Fourth Addition, and that at the time of vacation the adjoining lands both east and west of the alley were owned by the company, and therefore the lands included in the vacated alley reverted to lands on either side.

The question of vacation of roads, streets and alleys has received attention from the legislature since early days. All of our present statutes dealing with vacation and effects following have a common source. Without intending an exhaustive review of each change made, the following is to be noted:

Chapter 46 of the Acts of 1862, provided for incorporation of cities of not less than seven thousand inhabitants. Under section 22 of article 2 the council was given power to vacate any street or alley, nothing being said about effect of vacation. Chapter 108 of the Acts of 1862, provided for vacation of highways, streets and alleys by the Board of County Commissioners and under section 4 that upon vacation the street or alley thus vacated shall become "the property of owners of real estate thereto adjacent on each side."

In the revision of 1868, a change was made in the classification of cities, towns and villages, and cities of the first class were given power to vacate alleys but no provision for reversion was made. (G. S. 1868, ch. 18, art. II, § 19.) Cities of the second class were given power to vacate streets, avenues, alleys or lanes, and provided:

"That whenever any street, avenue, alley or lane shall be vacated, the same shall revert to the owners of the adjacent real estate, one-half on each side thereof." (G. S. 1868, ch. 19, art. III, § 36.)

Insofar as towns and villages were concerned, action was by the board of county commissioners, and upon vacation, the street or alley thus vacated became the property of owners of real estate thereto adjacent on each side. (G. S. 1868, ch. 108 [no art. number], § 4, p. 1072.)

In 1874 the legislature, by chapter 47, section 3, repealed article II of the General Statutes of 1868, chapter 18, section 18, and by

chapter 46 amended the first class city laws in many particulars, and omitted power to vacate streets and alleys. · We shall not follow the situations in other cities and towns. The same legislature, by chapter 108, section 16, created each incorporated city of more than six hundred persons a separate road district. By chapter 190 the legislature of 1877 provided for vacation of streets, alleys and other public reservations by the board of county commissioners and under section 5 that the vacated alleys should revert to the owner or owners of lots adjacent or abutting thereto according to the frontage of the lots or land.

In 1881 the first-class city law was again revised and by chapter 37, section 34, it was provided that when any street, avenue, alley or lane shall be vacated, the same shall revert to the owners of real estate thereto adjacent on each side, in proportion to the frontage, "except in cases where such street, avenue, alley or lane shall have been taken and appropriated to public use in a different proportion, in which case it shall revert to adjacent lots of real estate, in proportion as it was taken from them." Apparently this is the first statute providing for reversion in proportion as the real estate was taken.

Some intervening acts will not be noticed, but by the Laws of 1903, chapter 122, the first-class city laws were again amended in many particulars, and insofar as the question now before us is concerned, the legislature used the language to be found in both R. S. 1923 and G. S. 1935, 13-443.

It would extend this opinion to too great a length to show how the original vacation acts were amended to affect cities generally and second class cities particularly.

Insofar as second-class cities are concerned the statute as it now exists, and is hereafter quoted in part, has been substantially unchanged as to the quoted portion since the enactment of the Laws of 1885, chapter 99, section 2. In the revision of 1923 a previous section was restated and now appears as G. S. 1935, 14-423. The statute provides for vacation of an alley and—

". . . That whenever any street, avenue, alley or lane shall be vacated, the same shall revert to the owners of real estate thereto adjacent on each side, in proportion to the frontage of such real estate, except in cases where such street, avenue, alley or lane shall have been taken and appropriated to public use in a different proportion, in which case it shall revert to adjacent lots of real estate in proportion as it was taken from them: . . ."

Without following out the legislative history of the 1862 acts previously mentioned as pertains to streets and alleys in other than first- and second-class cities, it may be noted that provision is now made for the vacation of an addition or part of an addition to a city by proceedings before the board of county commissioners, and for reversion of a vacated street or alley. See G. S. 1935, 12-504 and 12-506. The latter section reads:

"The streets, alleys or other public reservations which may be so vacated shall revert to the owners of the real estate immediately abutting thereon, according to the frontage of such real estate thereon: *Provided*, That all lands so reverting shall revert to the owners of abutting lands holding the same by title derived directly or indirectly from the owners of said lands from which said street or alley or public reservation was originally platted."

It is unnecessary to note the statutory history as to highways as distinguished from streets and alleys, but interesting to note that where the state highway commission vacates a state highway, if it does not avail itself of certain rights granted, the vacated highway "shall revert to the present owners of the land of which it was originally a part." (G. S. 1943 Supp. 68-413.)

It appears that since 1862 there have been provisions for the vacation of streets, alleys and highways in cities, towns, villages and elsewhere and that the provisions of various statutes since that time have authorized vacation by invoking specified procedures which have changed from time to time and have changed the power of a particular body to act in a particular case. But all such statutes are *in pari materia* and subject to consideration to determine interpretation to be placed on any one statute.

It is not of great consequence in the instant case whether the particular alley was within or without the city limits when vacation proceedings were had. Location only determined the power of a particular body to declare the vacation.

Where lands are platted into lots and blocks, and streets and alleys are dedicated to public use, the fee to the streets and alleys is in the county (see *Douglas County v. City of Lawrence,* supra) and a purchaser of a particular lot obtains no interest in the street in front or the alley in the rear of his lot. On the other hand, where a highway is laid out by the county, usually all it secures is a right of use and the landholder retains the fee, subject to the public easement. In *Bowers v. Atchison, T. & S. F. Rly. Co.,* 119 Kan. 202, 237 Pac. 913, 42 A. L. R. 228, this court considered the

title acquired by the county and that retained by the original owner, and the effect of a vacation of the highway, and held:

"A forty-foot highway was established across a tract of land. The north line of the highway was twenty-five feet south of a railroad right of way. The railway company purchased the twenty-five-foot strip for use in connection with operation of the road and received a general warranty deed in the usual form. The deed in fact bounded the land on the highway, but without mentioning it, and stated the quantity of land conveyed. The deed was duly recorded, and afterwards the highway was vacated. *Held*, the grant extended to the center of the highway, subject to the public easement, and when the highway was vacated the railway company was owner of the unencumbered fee of the moiety of the way by the same title and to the same extent as of the twenty-five-foot strip." (Syl. ¶ 1.)

In part, appellant contends that notwithstanding Mr. Schweiter owned a tract of land out of which it was taken, when he filed the plat of the Fourth Addition, he separated the portion platted from the remainder of his land and that the alley on the east came entirely and completely from the land included in the Fourth Addition, and that upon vacation of the alley which marked the east side of the addition, all of the land included in the alley reverted to the lots in the addition. In support of that contention she relies upon *Shoen v. Baker*, 130 Kan. 630, 287 Pac. 233, where the syllabus reads:

"Where a landowner in platting an addition to a townsite voluntarily dedicates a part thereof to public use in the form of a street or avenue, the owners of lots which were a part of that plat and abutting on such street or avenue when it later is vacated come within the exception stated in the proviso of R. S. 14-423, whereby the street or avenue must revert to the abutting lot owners in the proportion in which it was taken from them or appropriated by them or their grantors."

The facts in that case were that in 1885 Louisa Olive platted a tract as an addition to Dodge City, the east thirty feet being dedicated as Hardesty street. In 1916 a tract immediately to the east and which was *not owned* by Louisa Olive was platted as Hardesty addition, lots in this addition facing on Hardesty street. In 1921 this street was vacated and controversy arose between the owner of a lot in Olive addition and the owner of a lot in Hardesty addition directly across Hardesty street, as to the ownership of the vacated street. Dodge City was a city of the second class, and the statute applicable has heretofore been quoted in part. The fact that at the time of dedication Hardesty street was taken from lands owned by Mrs. Olive, who at the time of dedication did not own the

abutting land east of the street, made a case for application of the statutory provision that the appropriation having been taken in a different proportion, upon vacation the vacated street reverted to the adjacent lots in the proportion taken from them and all having been taken from Mrs. Olive, adjacent lot owners to the east took nothing. Upon the facts presented this court did not decide what result would follow had Mrs. Olive, at the time she dedicated Olive's Addition, also owned the lands later platted as Hardesty addition. A fair inference seems to be that in such case the exception in the latter part of the proviso in the statute would have been held not to apply.

In the earlier case of *Railway Co. v. Showalter*, 57 Kan. 681, 47 Pac. 831, the following facts appear: The original townsite of Wellington was conveyed by the United States to the probate judge. (See Acts 1858, ch. 72; Gen. Laws 1862, ch. 204; G. S. 1868, ch. 109.) The south line of First street was the south line of the townsite. Later Myer's addition was platted, the south line of First street being the north boundary. Mrs. Showalter owned lots in Myer's addition immediately south of First street and the railway company owned lots immediately north across First street. First street was vacated April 20, 1887 (see same case, 49 Kan. 421, 32 Pac. 42) and Mrs. Showalter brought an action against the company to recover damages for the appropriation by the company of the south half of First street lying between their respective properties, claiming that on vacation of the street one-half of it reverted and accrued to her lots, the company contending that the whole of the vacated street vested in it by reason of its ownership of the lots on the north and that the whole of the street was taken from the townsite of Wellington. At the time the action was commenced section 2 of chapter 99 of the Laws of 1885, previously mentioned, was in effect. In disposing of the contention this court said:

"The language of the proviso relied on by the plaintiffs in error is, that the vacated street 'shall revert to adjacent lots of real estate in proportion as it was taken from them.' First street was never taken from the defendant's lots. Lots 12 and 13, which are bounded on First Street, never extended across or included any part of First Street until after the vacation. First Street was never taken from any lots. In platting the original townsite, First Street was taken from the south side of the whole quarter-section, and the defendants' lots were taken from the land adjoining. It would be as apt an expression to say that lots 12 and 13 were taken from First Street, as that First Street was taken from the lots. Each was included within the original tract covered by the townsite. The title to the street, by virtue of its dedi-

cation to public use, passed from the United States to the county. The title to the lots passed from the same source of title to the Railway Company. The title to the land covered by Myer's Addition must also have been derived from the common source of title,—the government of the United States; though at what date the title of the government was divested we are not informed, nor do we deem it material. While First Street was taken from the half-section covered by the townsite, it cannot fairly be said that it was taken from any lot, nor was any one lot as originally platted diminished in size, by reason of the streets, more than another; nor, indeed, can it be said that any lot was of less size than it would have been had First Street never been laid off, for more lots might have been made from it. This case, then, is one where a street, not taken from any particular adjacent tract but the full title to which passed directly from the Government of the United States to the county for public use, has been vacated, and the owners of adjacent lots have been by such vacation deprived of the advantages of a street. The mere fact that a section line chanced to correspond with the south side of the street, has little bearing on the question under consideration. People buying and improving city property usually buy with reference to streets and alleys which are visible, and directly affect the value of the property, and pay little or no heed to section lines. First Street, before its vacation, was open and available to the plaintiff for use in connection with her property. On its vacation, the title to one-half of it vested in the plaintiff, and the other half in the defendant, as the owners of the adjacent lots on each side; the land not having been taken and appropriated to public use from the lots on either side." (1. c. 684.)

A judgment in favor of Mrs. Showalter was affirmed.

No other of our decisions bearing on the precise point at issue has been called to our attention and our research discloses no other closely in point. General authorities are not particularly helpful because of varying law as to who owns the fee in the streets, what vacation statutes provide as to reversion and similar matters, as a reference to Elliott on Roads and Streets (4th ed.) ch. XLVIII, 25 Am. Jur. 423 (Highways, §§ 127, 128), 44 C. J. 917 (Mun. Corp., §§ 3668, 3669), will disclose.

In the briefs reference is made to the language in G. S. 1935, 13-443, and our attention directed to the proposition that land cannot revert to land. We need not pursue the subject. It has been shown that the provisions for reversion in our various statutes have an old and common source, and while the statute last referred to may be subject to a technical criticism, there is no doubt but what the legislature intended was that upon vacation the lands vacated reverted to the owners of abutting lands holding the title from the owners of the lands from which the vacated street or alley was originally platted, as is more clearly stated in G. S. 1935, 12-506.

A short review of the facts discloses that when Mr. Schweiter filed the plat of the Fourth Addition, he took the lands included from a larger tract he owned; that when he platted the alley in question, the land included therein was not taken from the platted lots, but from his entire tract of land. We are not persuaded by the contention that when he platted the Fourth Addition and fixed an alley on the east that he made such a separation of his lands that as owner of the unplatted lands to the east of the alley, he or his successors in title had no interest in a reversion if the alley was later vacated. If that contention were to be sustained we should have to overrule *Railway Co. v Showalter*, supra, which has stood unchallenged for many years, and which was decided under a statute the language of which, insofar as reversion is concerned, is substantially the same as now invoked. When Mr. Schweiter by separate conveyances deeded the lots in the Fourth Addition and the unplatted land east of the addition to the company, the situation was not changed. When the alley was vacated it reverted under the statute, and when the Company conveyed to the appellant by specific description the lots in the Fourth Addition, all the grantee received was the particular lots and the west half of the vacated alley, sometimes referred to in our decisions as an accretion or as an appurtenance. See *Marion County Comm'rs v. Clark*, 157 Kan. 132, 138 P. 2d 449, and cases cited therein. When the company conveyed to appellees' predecessor in title the specific lot in the Sixth Addition the grantee took that lot and the appurtenant east half of the vacated alley. The company had thus disposed of all its interest, and its later quitclaim deed of July 3, 1944, pretending to convey to appellant all of the vacated alley east of her lots in the Fourth Addition actually conveyed nothing. Neither was the provision of the ordinance vacating the alley, insofar as it relinquished the alley to the abutting owners, of any legal significance. The statute controlled. That what the ordinance provided was agreeable to the statute does not make any difference.

We note that appellant makes some contention that the terms of her deed include the entire alley; that the law abhors strips; that the doctrine of reversion does not control; that the fee to the alley having been given to the county, the legislature could later dispose of it; and that the deed to appellees' predecessor in title excepted the land in dispute from the grant. In our opinion each of these contentions has been disposed of by what has been said.

The trial court did not err in its judgment, which is affirmed.

BURCH, J. (dissenting): After a prolonged effort to comprehend the logic in the court's opinion, I am not convinced that the ruling of the district court was correct. This is not a case in which some governmental entity owned a street which was never a part of any addition but was designated as a street in the original plat of a township site as was true in the case of *Railway Co. v. Showalter,* 57 Kan. 681, 47 Pac. 831, relied upon in the opinion. In the present case the alley was created by, in connection with, and as a part of Schweiter's Fourth Addition. The plat thereof so shows. It was never a part of the land platted in Schweiter's Sixth Addition and was not a part of an unplatted tract. Therefore, the case of *Schoen v. Baker,* 130 Kan. 630, 287 Pac. 233, cited in the court's opinion, is in point and should be followed. I do not agree that the result should be different in this case merely because at one time the same company owned all of both additions. The two cases above referred to do not turn on such a factual difference and I see no logical reason for the creation of such a distinction. If such be a sound basis for discrimination, then it must follow that the result would be directly opposite as to any part or the whole of the Fourth Addition if Schweiter had sold to a third party rather than to the same company. If the legislature intends that such should be the case, it should be permitted to say so. I see no reason for giving the statute a strained construction. The wording of the exception therein is simple and contains nothing in the nature of an exception to the exception. The hill of legislative history construed in the court's opinion is not helpful to me. Instead of creating a high point from which one can see clearly the question in this case it only serves to cast a shadow of confusion over the plain provision of the statute.