No. 38,888

WILLIAM M. POLZIN, *Appellee*, v. NATIONAL COOPERATIVE REFINERY ASSOCIATION, a Corporation, and NORTHERN ORDNANCE, INCORPORATED, *Appellants*.

(266 P. 2d 293)

Opinion filed January 23, 1954.

*Emmet A. Blaes,* and *Verne M. Laing,* both of Wichita, argued the cause, and *W. D. Jochems, J. Wirth Sargent, Lester L. Morris, Ferd E. Evans, Jr.,* and *Ralph R. Brock,* all of Wichita, and *R. C. Russell, Isabel Obee* and *Don C. Foss,* all of Great Bend, were with them on the briefs for the appellants.

*Boyce P. Hardman,* of Great Bend, argued the cause, and *Herbert Diets,* of Great Bend, was with him on the briefs for the appellee.

The opinion of the court was delivered by

WEDELL, J.: This was an action to recover damages for the pollution of plaintiff's land, more particularly a deep water well, pursuant to the provisions of G. S. 1949, 55-121.

A mistrial resulted and defendants have appealed solely from an order overruling their separate demurrers to plaintiff's evidence. For brevity we shall refer to appellant, National Cooperative Refinery Association, as "National," and to appellant, Northern Ordnance, Incorporated, as "Northern," where necessary to distinguish between appellants.

The record in this appeal is quite voluminous, including oral testimony and numerous exhibits, but as we view the questions presented it is not necessary to encumber our reports with numerous highly interesting but not determinative facts. For immediate purposes it is sufficient to state appellee had a 223 foot water

well in the southwest corner of the southwest quarter of section 4 of his land in Barton county. At a point approximately 750 feet to the south and slightly to the west thereof National had drilled an oil well on its lease on adjoining land. At a point 1,610 feet to the southwest of that oil well Northern operated a saltwater disposal well on its lease. Appellee claimed: The National oil well was improperly cased, which permitted various obnoxious substances from the oil fields of Northern, all of which combined substances are referred to in the record as "saltwater," to be forced into the hole of the National well outside the casing; Northern's saltwater disposal well was not drilled deep enough to force its saltwater beneath the subsurface water supply for appellee's water well; that an unreasonable amount of saltwater was forced into Northern's disposal well and under tremendous and dangerous pressure was forced into the oil well of National and also into the formation which was the source of water for appellee's water well.

One of appellants' contentions, in substance, is that appellee's evidence disclosed saltwater was naturally contained in the entire vicinity of appellee's water well and appellee's evidence was insufficient to establish the fact his well was polluted by appellants. We shall not narrate the evidence. It is sufficient to say a complete review of the record discloses ample testimony to support appellee's claim he had good water, soft water, in his well when it was drilled on July 31, 1948; the first notice of any saltwater in his well was on September 20, 1948, after which date he had tests thereof made which disclosed the same type of mineralized water found in the oil well of National; the last mentioned well was completed July 21, 1948; the pollution of appellee's water well was caused solely by the operations of the National oil well and the saltwater disposal well of Northern; the disposal well had been operated from the fall of 1947 until June 15, 1948, by National and since then it has been owned and operated by Northern.

This evidence was sufficient to take the case to the jury. We are not concerned on demurrer with any possible conflict in the testimony of various witnesses or in the direct and cross-examination of the same witness. Appellants' general demurrers were properly overruled.

Another ground of the demurrers was *res judicata.* That defense was pleaded in appellants' answers and was denied in appellee's reply. There was no substantial evidence, if any, in appellee's case

in chief upon which to sustain this ground of the demurrers. Touching this contention appellants argue the district court should have taken judicial notice of the records with respect to two previous actions filed by appellee in the same court for damages resulting from pollution of other lands belonging to appellee, lying to the east and west of appellee's land involved in the instant case. Those actions formed no part of appellee's evidence. Appellants introduced those records in their case in chief.

As heretofore stated, appellants pleaded *res judicata* and appellee denied it. The court overruled appellants' motion for judgment on the pleadings. No appeal has been taken from that ruling. We, therefore, now have before us only appellee's evidence and appellants' demurrer thereto. *Res judicata* is an affirmative defense. It must not only be pleaded but proved by the party asserting it. (*Luttgen v. Ergenbright,* 161 Kan. 183, 166 P. 2d 712; *Moore v. Petroleum Building, Inc.,* 164 Kan. 102, 107, 187 P. 2d 371.) In 30 Am. Jur., Judgments, § 273, the rule is stated as follows:

"Although there is some authority in support of the rule that a court will take judicial notice of a judgment previously rendered by it, and sought to be made available as a basis for the application of the doctrine of *res judicata,* at least where such judgment is referred to in the pleadings, a court ordinarily will not take judicial notice of a judgment rendered in a different action; it is generally held that the existence and contents of a judgment sought to be made available as a basis for the application of the doctrine of *res judicata* must be proved by offering the record or a copy thereof in evidence, whether the judgment was rendered by the court trying the principal case, or by another court."

To the same effect is 20 Am. Jur., Evidence, §§ 87, 88.

In the instant case we are not dealing, on demurrer, with the legal effect of the prior actions which were no part of appellee's evidence. We hold on that demurrer the court was not required to take judicial notice of the former actions.

Appellants also contend appellee, by virtue of the former actions, is guilty of splitting his cause of action. This, if it be a fact, is likewise not disclosed by appellee's evidence and the contention requires no further treatment.

Appellants also argue the instant action is barred by the two year statute of limitations. (G. S. 1949, 60-306, *Third.*) The contention cannot be sustained. According to appellee's evidence the damage to his water well did not become apparent until

September 20, 1948. This action was filed on May 29, 1950, which was within time.

We shall next consider additional grounds of Northern's demurrer. The first ground thereof is the evidence failed to show it had anything to do with the damage complained of since it acquired its interest in the Bushnell lease, on which the water disposal well was located, practically on the eve of the damage complained of.

It is conceded it purchased the lease on June 15, 1948. The damage to appellee's water well did not become apparent until September 20, 1948, over three months after Northern had acquired the lease and continued to operate the saltwater disposal well. Here again we shall not narrate the voluminous testimony. We pause only to state there was evidence the saltwater from Northern's disposal well entered the hole of the National well in July, 1948, and that there also was evidence it woud require about six weeks for the saltwater to reach appellee's water well. This ground of the demurrer is, therefore, not well taken.

Another ground of Northern's demurrer was that there was no community of wrongdoing shown. The disposal well had been improperly and unlawfully constructed and operated by National since the fall of 1947. Northern bought the lease and, of course, the disposal well on it in the condition stated on June 15, 1948. It continued to operate it. It obtained knowledge the saltwater injected into it was entering the hole of the National well, which was located 1,610 feet to the northeast, to such an extent that National could not properly complete its well until Northern stopped using the tremendous pressure on unreasonable amounts of saltwater it was injecting into the disposal well. It was not until Northern was requested to, and did, stop such operations that National was able to complete its oil well, but only by pouring great quantities of cement around the casing of the well. Northern, therefore, knew in July, 1948, it had been pressuring saltwater through the subsurface formations to a distance of at least 1,610 feet in the direction of appellee's land. Exactly how much closer to appellee's water well the saltwater may have been pressured through subsurface formations at that time as a result of the combined operations of the disposal well prior to June 15, 1948, and by Northern thereafter, was not disclosed. The testimony did, however, prove community wrongdoing by National and Northern

in the successive wrongful operations of this identical instrumentality, the disposal well. Precisely how far the saltwater was pressured into subsurface formations by each of them while operating the disposal well probably was impossible to measure.

In addition to the wrongful operation of the same instrumentality by both appellants over different periods of time there was also evidence of subsequent concurrent negligence. Various qualified witnesses testified positively that, in their opinion, appellee's water well was contaminated by reason of the faulty construction and operation of Northern's disposal well and the faulty drilling and casing of National's oil well. In fact, there was testimony the combined conduct of appellants was the sole cause of the contamination of the water well. The evidence disclosed community of wrongdoing and concurrent negligence. In fact the burden did not rest on appellee to prove appellants' negligence. The statute makes it unlawful to permit saltwater, oil or refuse to escape. Appellants' only defense was to prove the escape thereof was beyond their control or that it could not have been reasonably anticipated and guarded against. (G. S. 1949, 55-121.) This ground of the demurrer was, therefore, properly overruled.

Northern further contends, if appellee were damaged, his evidence discloses the damage was caused by an independent intervening agency, the defective construction of National's oil well and, therefore, it is not liable. The contention is not good. We have already indicated appellants were both guilty of wrongful acts committed at different times and also of concurrent wrongdoing. Even if there were no joint action, concert of action, it would not mean their wrongful acts were not concurrently performed. The fact acts are independently performed does not prevent their being concurrent.

These principles have been stated and applied repeatedly in this state. See *Mosby v. Manhattan Oil Co.*, 52 F. 2d 364, in which many of the early Kansas cases are reviewed. In the Mosby case the author of the opinion quoted from Sherman and Redfield on the Law of Negligence, 6th ed., § 122, as follows:

" 'Concurrent, as distinguished from joint negligence, arises where the injury is proximately caused by the concurrent wrongful acts or omissions of two or more persons acting independently. That the negligence of another person than the defendant contributes, concurs or co-operates to produce the injury is of no consequence. Both are ordinarily liable. And unless the damage

caused by each is clearly separable, permitting the distinct assignment of responsibility to each, each is liable for the entire damage. The degree of culpability is immaterial' " (p. 367).

See, also, *Tilden v. Ash,* 145 Kan. 909, 67 P. 2d 614; *Taggart v. Yellow Cab Co. of Wichita,* 156 Kan. 88, 96, 131 P. 2d 924; *Gibson v. Bodley,* 156 Kan. 338, 345, 133 P. 2d 112; *Rowell v. City of Wichita,* 162 Kan. 294, 176 P. 2d 590; *Rork v. Beatty,* 169 Kan. 320, 219 P. 2d 355.

In the Rowell case it was held:

"A cause is concurrent if it was a cause which was operative at the moment of injury and acted contemporaneously with another cause to produce an injury and was an efficient cause in the sense that without it the injury would not have occurred." (Syl. ¶ 11.)

In the Tilden case we held:

"Substantially concurrent negligent acts of two or more persons render all liable as joint tortfeasors where the act or acts of each contribute to the injury. In such circumstances the degree of culpability of each is immaterial and each is liable for the entire damage." (Syl. ¶ 2.)

We need not determine whether the conduct of National or Northern was the proximate cause of the damage. In the Taggart case we held:

"Where injury to an innocent party would not have occurred, except for the concurrent negligence of others, the subject of proximate cause need not be considered; those whose acts united in producing the injury will be held jointly and severally liable to the injured party." (Syl. ¶ 6.)

We have not overlooked the various decisions and statements of law supplied by the industry of appellants' counsel. They do not alter our views herein expressed.

The order overruling appellants' demurrers to appellee's evidence is affirmed.