Mary Irene NIXON, Kathryn L. Meacham, Tonya Dawn Tolbert, Personal Representative for the Estate of Phillip Spieker, Deceased, Russell D. Ehrhardt, Administrator of the Estate of Betty Romp, Deceased f/k/a Elizabeth Louis Ostert, Susan Dawson, Administrator of the Estate of Clarence E. Fifer, Deceased, and Hazel Potter Dornbush, Appellees,

v.

STATE of Iowa, Appellant.

No. 03–1850.

Supreme Court of Iowa.

Sept. 30, 2005.

Rehearing Denied Nov. 9, 2005.

Thomas J. Miller, Attorney General, Craig Kelinson, Special Assistant Attorney General, and Bruce Kempkes, Assistant Attorney General, for appellant.

Curtis J. Krull of Roehrick, Krull & Blumberg, Des Moines, and Eric Borseth of Borseth, Siebrecht & Siebrecht, Altoona, for appellee Nixon.

Evan A. Douthit, Randall L. Rhodes, and Mary C. O'Connell of Douthit Frets Rouse & Gentile, L.L.C., Kansas City, Missouri, for Kathryn L. Meacham, Tonya Dawn Tolbert, Russell D. Ehrhardt, Susan Dawson and Hazel Potter Dornbush, appellees.

STREIT, Justice.

The King can do no wrong, but will he do right by our orphans?[1] Over sixty-five years ago, a professor at the University of Iowa performed an experiment on children at the Iowa Soldiers' Orphans' Home testing a theory regarding the origins of stuttering in young children. The children did not find out they were actual participants in the study for seven decades.

When the children did find out, they sued the State of Iowa for damages relating to their lifelong battle with speech problems. The State filed a motion to dismiss. The State claimed it had not waived its sovereign immunity for the plaintiffs' injuries. The district court overruled the motion. We likewise conclude the State waived its sovereign immunity and affirm.

## I. Principles of Review

At the outset, it is important to point out the procedural posture of this case, because it affects our recitation of the facts. We review a district court's ruling on a motion to dismiss for correction of errors at law. *Brubaker v. Estate of DeLong*, 700 N.W.2d 323, 326 (Iowa 2005). A motion to dismiss should be granted only if the plaintiff's petition "on its face shows no right of recovery under any state of facts." *Rees v. City of Shenandoah*, 682 N.W.2d 77, 79 (Iowa 2004) (citation omitted). For this reason, we must view the facts in the light most favorable to the plaintiffs. *Id.* Nothing in this opinion, therefore, should be construed as a ruling on the merits of the plaintiffs' claims.

## II. Background Facts and Proceedings

In 1939, Professor Wendell Johnson of the University of Iowa (f/k/a "The State University of Iowa") designed a study to

---

1. *See generally* Michael A. Olsen, *The King Can Do No Wrong, But Will He Do Right By Our School Children?*, 1995 BYU Educ. & L.J. 55 (1995).

test his diagnosogenic (or labeling) theory of stuttering. Professor Johnson believed nonstutterers could become stutterers if others labeled them as stutterers. Professor Johnson directed Mary Tudor, a graduate student at the University, to conduct the study on children at the Iowa Soldiers' Orphans' Home.

To test Professor Johnson's theory, six nonstuttering children at the Home were told they were stutterers or were in danger of becoming stutterers. These children (or their respective estates) are the plaintiffs in the underlying action.[2] They were given negative "therapy" designed to make them stutter. At the conclusion of the study, Tudor concluded all six children displayed a loss of self-confidence, self-image, and self-esteem. Tudor observed detrimental effects on their speech delivery. Over the next few decades the experiment was labeled the "Monster Study," and the title persists today.

For over sixty years, no one told the children about the true nature of the study. In June 2001, however, a newspaper discovered the truth and published a story about the Monster Study.

In April 2003, the plaintiffs sued the State in the district court for intentional infliction of emotional distress, fraudulent misrepresentation, breach of fiduciary duty, invasion of privacy, and civil conspiracy. The plaintiffs claimed the State's tortious actions continued to the present day because it concealed the study from them over the years.

The State filed a motion to dismiss. It maintained the plaintiffs' claims failed because the alleged injuries occurred when the State was sovereignly immune, i.e., before the effective date of the Iowa Tort Claims Act. The district court, however, summarily concluded the petition "[c]ontain[ed] claims upon which relief may be granted" and denied the motion. The State applied for interlocutory review, which we granted. We will restrict our analysis to the pertinent argument in this case: Whether the State has waived its sovereign immunity for this claim under the Iowa Tort Claims Act.[3]

### III. Analysis

■ At the time the State first injured the plaintiffs in 1939, it was immune from suit under the common-law doctrine of sovereign immunity. *See Montandon v. Hargrave Constr. Co.*, 256 Iowa 1297, 1299–1300, 130 N.W.2d 659, 660 (1964). This doctrine came to the United States through the old English maxim that "the King can do no wrong" and was therefore not liable unless he first consented to the suit. *See generally* Erwin Chemerinsky, *Shifting the Balance of Power? The Supreme Court, Federalism, and State Sovereign Immunity*, 53 Stan. L.Rev. 1201, 1201–02 (2001). The reasons usually advanced for the doctrine's support were "public policy, absurdity of a wrong committed by an entire people, impossibility of carrying on governmental functions if tax money is diverted, and the government's status as a nonprofit organization." *Torts–Governmental Immunity—Iowa*

---

**2.** The surviving plaintiffs are Mary Nixon, Kathryn Meacham, and Hazel Dornbush. The deceased plaintiffs are Phillip Spieker, Betty Romp, and Clarence Fifer, who are represented by Tonya Tolbert, Russell Ehrhardt, and Susan Dawson, respectively.

**3.** We will not broaden our analysis to entertain arguments involving statutory construc-

tion of terms relevant to a statute-of-limitations analysis because this is a waiver of immunity case, not a statute of limitations case. Any attempt to make this a statute of limitations issue is past the State's original motion to dismiss on grounds of governmental immunity.

*Reaffirmation (Boyer v. Iowa High School Athletic Ass'n (Iowa 1964))*, 50 Iowa L.Rev. 226, 227 n.5 (1964) (citations omitted). For nearly 100 years, the doctrine of sovereign immunity was the law of our state, but by the mid–1960s, the doctrine had become the subject of a great deal of criticism by both commentators and the courts. *Boyer v. Iowa High School Athletic Ass'n*, 256 Iowa 337, 342–43, 127 N.W.2d 606, 609–10 (1964). In the 1964 decision, *Boyer v. Iowa High School Athletic Association*, we were directly confronted with whether the doctrine "should be abrogated in Iowa as outmoded, harsh and not in keeping with the modern trend of the law." *Id.* at 339, 127 N.W.2d at 607. Our five-to-four majority opinion concluded that "abrogation of the doctrine should come from legislative, not judicial action." *Id.* In a vigorous dissent, Justice Moore argued:

The whole doctrine of governmental immunity from liability for tort rests upon a rotten foundation. It is almost incredible that in this modern age of comparative sociological enlightenment, and in a republic, the medieval absolutism supposed to be implicit in the maxim, "the King can do no wrong," should exempt the various branches of the government from liability for their torts, and that the entire burden of damage resulting from the wrongful acts of the government should be imposed upon the single individual who suffers the injury, rather than distributed among the entire community constituting the government, where it could be borne without hardship upon any individual, and where it justly belongs.

*Id.* at 349–50, 127 N.W.2d at 613 (Moore, J. dissenting) (citation and internal quotation marks omitted). The Iowa Legislature settled this debate one year later when it enacted the Iowa Tort Claims Act waiving the State's immunity and permitting it to be sued much like any other private individual. *See* 1965 Iowa Acts ch.

79. But apparently this forty-year-old debate concerning the king's liability for his past indiscretions still simmers within our court today.

■ As presently written, the Iowa Tort Claims Act contains a statute of limitations that bars certain stale claims. The Act states:

Every claim and suit permitted under this chapter shall be forever barred, *unless within two years after such claim accrued,* the claim is made in writing to the state appeal board under this chapter.

Iowa Code § 669.13 (2005) (emphasis added). Precedent clearly holds a claim does not "accrue" until the plaintiff "discovers the injury or by the exercise of reasonable diligence should have discovered it." *Vachon v. State*, 514 N.W.2d 442, 445 (Iowa 1994); *see also Trobaugh v. Sondag*, 668 N.W.2d 577, 581 (Iowa 2003); *Callahan v. State*, 464 N.W.2d 268, 271 (Iowa 1990). It is undisputed that the plaintiffs made their claims in writing to the state appeal board within two years after discovering the cause of their injuries. For this reason, the plain and unambiguous language of the limitations provision of the Iowa Torts Claims Act does not bar their cause of action. The district court should be affirmed for this reason. *See Coralville Hotel Assocs., L.C. v. City of Coralville*, 684 N.W.2d 245, 248 (Iowa 2004) ("[P]recise and unambiguous language should be given its plain and rational meaning without resort to the rules of statutory construction.").

■ The State urges us, however, to go beyond the statutory text to divine legislative intent. It asks us to travel forty years into the past to resurrect a "sunrise" provision the legislature repealed long ago. For as originally enacted, the Iowa Tort Claims Act contained the following language:

[A] 'claim' includes only such claims accruing on or after January 1, 1963. . . . 1965 Iowa Acts ch. 79, § 2(5), *repealed by* 1969 Iowa Acts ch. 81, § 2. Based upon this *repealed* "sunrise" provision—as well as a long-repudiated judicial construction of the verb "to accrue" as "to occur"—the State concludes the Iowa Torts Claim Act is intended to bar all claims for injuries that *occurred before January 1, 1963.* The Iowa Tort Claims Act, the State paradoxically concludes, means what it does not say; indeed, the State interprets the Act to say what the legislature explicitly said it does not say when it repealed the relied-upon language in 1969. The State effectively asks us to reenact statutory language the legislature repealed long ago. We will not do so. *See Doe v. Ray,* 251 N.W.2d 496, 501 (Iowa 1977) ("[W]e must avoid legislating in our own right and placing upon statutory language a strained, impractical or absurd construction."); *cf. Indep. Sch. Dist. v. Iowa Employment Sec. Comm'n,* 237 Iowa 1301, 1308, 25 N.W.2d 491, 496 (1946) (noting "history of statute may properly be considered *in case of ambiguity*" (emphasis added) (citation omitted)). The repealed portion of the Iowa Tort Claims Act was the statute of limitations provision, and we do not find it appropriate to befuddle our sovereign immunity analysis with statute of limitations arguments that are not now before us.

However, even if the repealed language of the Iowa Tort Claims Act were somehow still enforceable, it would not bar the plaintiffs' claims. We need not bog ourselves down in all the intricacies of the State's historical-statutory analysis. The linchpin of the State's argument is its interpretation of the verb "to accrue," and in what follows, we focus upon it.

As originally enacted, the Iowa Tort Claims Act only waived the State's sovereign immunity for those claims "accruing on or after January 1, 1963." 1965 Iowa Acts ch. 79, § 2(5), *repealed by* 1969 Iowa Acts ch. 81, § 2. It also imposed a statute of limitations: once a claim "accrued," the plaintiff had two years or until January 1, 1967 to file a claim with the state appeal board, whichever was later. 1965 Iowa Acts ch. 79, § 13, *repealed by* 1969 Iowa Acts ch. 81, § 2.[4]

After surveying a century's worth of Iowa cases, the State concludes the verb "to accrue" in 1965 meant "to occur" or "to happen." *See, e.g., Ogg v. Robb,* 181 Iowa 145, 156, 162 N.W. 217, 220–21 (1917) (concluding claim accrued when injury occurred, not when plaintiff discovered cause of injury). While the State recognizes that use of the verb "to accrue" in the Iowa Tort Claims Act now incorporates the discovery rule, *see, e.g., Vachon,* 514 N.W.2d at 445, it opines that the legislature could not have foreseen this judicial change in the verb's meaning in 1965 when it passed the Iowa Tort Claims Act. At best, the State believes, matters were unsettled when the legislature passed the Act. *See Chrischilles v. Griswold,* 260 Iowa 453, 462–63, 150 N.W.2d 94, 100 (1967) (observing a trend in other jurisdictions to adopt the discovery rule and adopting the discovery rule in negligence actions) (citing *Urie v. Thompson,* 337 U.S. 163, 169–70, 69 S.Ct. 1018, 1024–25, 93 L.Ed. 1282, 1292 (1949)); *Ricciuti v. Voltarc Tubes, Inc.,* 277 F.2d 809, 812–13 (2d Cir.1960); *Polzin v. Nat'l Co-op. Refinery Ass'n,* 175 Kan. 531, 266 P.2d 293, 297 (1954); *Johnson v. Caldwell,* 371 Mich. 368, 123 N.W.2d 785, 791 (1963); *Dryden v. Omaha Steel Works,* 148 Neb. 1, 26 N.W.2d 293, 295 (1947); *Rothman v. Silber,* 83 N.J.Super. 192, 199 A.2d 86, 92 (1964); *Foley v. Pittsburgh–Des Moines Co.,* 363 Pa. 1, 68 A.2d 517,

---

**4.** Both provisions of the statute show the legislature intended the repealed Act to be retroactive. Only the extent of the retroactivity is at issue.

535 (1949); *Ginkowski v. Ginkowski,* 28 Wis.2d 530, 137 N.W.2d 403, 406 (1965)). The legislature, it is urged, could only have meant to use the verb "to accrue" in its old-fashioned sense because we cannot assume it knew how other courts had interpreted other tort claims acts or how we might interpret it in the future.

This reasoning is flawed on several levels. At the most basic level, one wonders: What if the legislature hadn't repealed the sunrise provision? Would the State's argument have any merit? Surely not: there can be no question that if the legislature had not repealed the sunrise provision, the present definition of "to accrue," which incorporates the discovery rule, would not bar the plaintiffs' claims. Paradoxically, then, the State relies on repealed language which, *even if it were still in force,* would not bar the plaintiffs' claims.

It is apparently the mere fact of the repeal that matters so much to this analysis. The State focuses upon the repeal because the State believes it tells us something about what the legislature meant when it enacted the Iowa Torts Claims Act in 1965. *See Doe,* 251 N.W.2d at 501. ("[I]n construing a statute we must be mindful of the state of the law when it was enacted"); *see also* Explanation of S.F. 376, 63d Gen. Assemb., Reg. Sess. (Iowa 1969) (stating that the language was repealed because it was "no longer necessary in view of the [two-year] statute of limitations"). The State thus attempts to *freeze* the meaning of the repealed statute to the meaning it allegedly had in 1965—even though there is no reported case attributing that meaning.[5]

Even if we were to pretend it were sometime between 1965 and 1969 and assume the legislature intended to give the verb "to accrue" a single, immutable meaning for all time,[6] it is more probable the legislature intended to incorporate the discovery rule in the original Iowa Tort Claims Act. The Act waived the State's sovereign immunity for those claims *"accruing* on or after January 1, 1963." 1965 Iowa Acts ch. 79, § 2(5) (emphasis added), *repealed by* 1969 Iowa Acts ch. 81, § 2. Notably, it does *not* waive the State's sovereign immunity for claims *"happening* on or after January 1, 1963" or *"occurring* on or after January 1, 1963." Surely the legislature knew how to use these verbs.

If we take a step back and look at the relevant statutory language in its entirety, the legislature demonstrated it knew there was a difference between "occur" and "accrue:"

"Claim" means any claim against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act

5. Any reliance upon on our language in *Graham v. Worthington,* 259 Iowa 845, 855, 146 N.W.2d 626, 634 (1966), is misplaced. We were not presented with the issue here in that case, and therefore any language on our part equating "to accrue" with "to commit" is mere *obiter dictum. See Boyles v. Cora,* 232 Iowa 822, 847, 6 N.W.2d 401, 413 (1942) (defining *obiter dicta* as "passing expressions of the court, wholly unnecessary to the decision of the matters before the court").

6. Given that the verb "to accrue" is a term of art, *see, e.g., Dean v. Iowa–Des Moines Nat'l Bank,* 227 Iowa 1239, 1242, 281 N.W. 714,

717 (1938), and recognizing the trend in 1965 to incorporate a discovery rule into that phrase, it is just as probable that the legislature did not engraft *any* particular meaning to the verb "to accrue" but, recognizing it was a term of art, left it for the judiciary to construe. As Justice Holmes once wrote, "[a] word is not a crystal, transparent and unchanged, it is the skin of a living thought and may vary greatly in color and content according to the circumstances and the times in which it is used." *Towne v. Eisner,* 245 U.S. 418, 425, 38 S.Ct. 158, 62 L.Ed. 372 (1918). The legislature may have recognized as much.

or omission of any employee of the state while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death, in accordance with the law of the place where the act or omission *occurred.* However, "claim" includes only such claims *accruing* on or after January 1, 1963....

1965 Iowa Acts ch. 79, § 2(5), *repealed by* 1969 Iowa Acts ch. 81, § 2 (emphasis added). Clearly, the legislature's use of the verb "occurred" in the sentence immediately before the last sentence, above, shows the legislature must have meant something other than "to occur" when it used the verb "accruing." Otherwise, it simply would have used the word "occurring."

In the coming decades, we would incorporate the discovery rule into the Act *because it was the correct interpretation of the statute.* Moreover, there was nothing revolutionary about the cases in which we did so, *Vachon* and *Callahan;* neither expressly overruled any prior cases. The Iowa Tort Claims Act was a relatively new statute—a blank slate. Simply because we were not presented with the opportunity to construe the use of the verb "to accrue" in the Act between 1965 and 1969 does not mean it did not include a discovery rule.

Had we been given the chance, it is likely we would have—or at the very least should have—given the statutory phrase the meaning the plaintiffs suggest. It is the proper interpretation of the statute, according to this court in *Vachon* in 1994. It is also the proper interpretation according to the United States Supreme Court in 1979. *United States v. Kubrick,* 444 U.S. 111, 123–24, 100 S.Ct. 352, 360, 62 L.Ed.2d 259, 270–71 (1979) (holding the discovery rule applies to the Federal Tort Claims Act and that the time limitation of U.S.C.

§ 2401(b) does not commence until discovery of the injury). As we recognized in *Callahan,* the Federal Tort Claims Act is "very similar" to the Iowa Act, and for this reason, we give considerable weight to cases interpreting that Act. 464 N.W.2d at 271; *see also Feltes v. State,* 385 N.W.2d 544, 547 (Iowa 1986); *Adam v. Mount Pleasant Bank & Trust Co.,* 340 N.W.2d 251, 252 (Iowa 1983). As we also pointed out in *Chrischilles*—decided around the same time as the legislature passed the Act—a trend in this direction had already developed. 260 Iowa at 463, 150 N.W.2d at 100 (citations omitted). Indeed, the United States Supreme Court had recognized the discovery rule as early as 1941. *Urie,* 337 U.S. at 169–70, 69 S.Ct. at 1024–25, 93 L.Ed. at 1292 (holding the discovery rule applies to the time limitations of the Federal Employers Liability Act, which, like our tort claims act, begins to run on "accrual.").

In sum, there is no reason why we should judicially reenact statutory language the legislature expressly repealed and then engraft upon that statute a construction of a word that we would not adopt today had we been presented with the opportunity back in 1965. It is not our role to narrow the waiver of immunity granted by our legislature through our power to interpret statutes. *See Doe,* 251 N.W.2d at 501 (recognizing that in interpreting a statute "we must avoid legislating in our own right"). We must simply permit these plaintiffs access to the same remedy the Act will surely afford to those who are injured today but who will not discover the cause of their injuries for years to come.

## IV. Disposition

The district court is affirmed. This matter is remanded to the district court for

further proceedings not inconsistent with this opinion.

**AFFIRMED.**

All justices concur except TERNUS and CADY, JJ., who dissent separately, and CARTER, JJ., who joins both dissents.

TERNUS, Justice (dissenting).

I dissent. The majority believes the only consequential issue in this case is whether the statute of limitations for claims against the State, Iowa Code section 669.13, bars the plaintiffs' claims. They have given little consideration to the State's argument that the plaintiffs' claims were barred long before suit was filed in 2003, and that events occurring after these claims were barred cannot serve to resurrect them. I am convinced this court's long-standing rules of statutory interpretation and well-established legal principles governing the revival of barred claims compel the conclusion that the plaintiffs' claims are barred as a matter of law.

A. *Points of disagreement.* The majority relies on section 669.13 and the discovery rule to conclude the plaintiffs' suit is not time barred. I would agree that if one limits one's consideration to the application of section 669.13, the plaintiffs' claims are not barred. But the State contends the plaintiffs' claims were barred long before this action was filed. It asks the court to examine prior law that it says cut off the plaintiffs' right to bring this suit decades ago. The majority unfairly characterizes the State's contention as asking the court to go back forty years and reenact a repealed sunrise provision in the original legislation. The majority refuses to do so. They also claim that the repealed provision would not have barred the plaintiffs' claims anyway, even if the court were to consider it. I will address each aspect of the majority's analysis separately.

B. *Proper analytical framework.* I begin with the majority's description of the State's request that the court examine prior statutes to determine the viability of the plaintiffs' claims. Contrary to the majority's statement that the State wants the court to reenact a repealed statute, the State is merely requesting the court to properly analyze the issue presented by the State's statute-of-limitations defense. That defense requires the court to examine not only the current statute of limitations, but any prior applicable limitations period that may have already expired. *See Frideres v. Schiltz,* 540 N.W.2d 261, 266 (Iowa 1995).

In *Frideres,* this court answered certified questions concerning a newly-enacted statute of limitations applicable to claims of sexual abuse. *Id.* at 263 (referring to Iowa Code section 614.8A (1993)). We stated the following general principles with respect to statutes of limitations:

> " 'A general rule with respect to statutes of limitations is that the period of limitation in effect at the time suit is brought governs in an action even though it may lengthen or shorten an earlier period of limitation.... *However, another general rule ... is that if plaintiff's suit was barred by the running of a statute of limitations prior to the extension of the limitation period, the subsequent statute cannot revive defendant's liability.'* "

> . . . .

> "This general rule has been followed and further explained by this court and federal courts applying Iowa law. Previously, we have held that the statute of limitations in effect at the time the cause of action accrues is controlling and that *the repeal or amendment of a statute of limitations cannot act retrospectively to revive actions previously barred under*

*a prior statute in the absence of express legislative intent."*

*Id.* at 266 (citations omitted) (emphasis added). Applying these principles, this court held that the new statute of limitations for sexual abuse contained in Iowa Code section 614.8A did "not apply retroactively to revive claims that have been barred by an applicable statute of limitations in existence prior to the enactment of section 614.8A." *Id.* at 267. We noted that "[i]n determining whether a claim has been barred by an applicable statute of limitations, . . . application of the discovery rule must be made as a necessary step in that resolution." *Id.* We clarified, however, that the discovery rule did not operate retroactively:

> Our common law discovery rule thus applies to claims filed prior to the enactment of section 614.8A, and the statutory discovery rule of section 614.8A applies to actions filed thereafter. *Claims barred by preexisting statutes of limitation are not revived by either discovery rule.*

*Id.* (emphasis added).

The majority does not address the principles of law discussed in *Frideres,* and certainly does not undertake to apply them to this case. I think this law must be applied to fully and fairly analyze the State's defense. As the following discussion explains, these principles require that the district court's denial of the State's motion to dismiss must be reversed.

C. *Sovereign immunity and statute of limitations when tort committed.* To determine whether the plaintiffs' claims are barred by a preexisting statute of limitations, we must go back in time. I begin with the state of the law when the alleged torts were committed.

The plaintiffs seek to recover damages for torts allegedly committed by the State in 1939. As the majority acknowledges, at that time the State was immune from suit. *See Montandon v. Hargrave Constr. Co.,* 256 Iowa 1297, 1299–1300, 130 N.W.2d 659, 660 (1964). In addition, even had the plaintiffs been able to sue the State in 1939 or the years immediately following, their claims would have been subject to the two-year statute of limitations for injuries to the person. *See* Iowa Code § 11007 (1939). Moreover, that two-year limitations period would not have been tolled by the plaintiffs' failure to discover their claims against the State.[7] *See McGrath v. Dougherty,* 224 Iowa 216, 223, 275 N.W. 466, 470–71 (1937). The only discovery rule recognized by the Iowa courts at that time was the statutory discovery rule for equitable fraud actions found in Iowa Code section 11010 (1939). Therefore, the plaintiffs' claims here were barred by the statute of limitations in 1941, unless there is some statutory enactment that could validly revive them. Apparently, the majority believes that statutory enactment is the State Tort Claims Act.

D. *State Tort Claims Act and its retroactivity provision.* The State Tort Claims Act was enacted in 1965, more than twenty-three years after the plaintiffs' claims were time barred. *See* 1965 Iowa Acts ch. 79 (codified at Iowa Code ch. 25A (1966), now Iowa Code ch. 669 (2003)). This act

---

7. Additionally, the existence of sovereign immunity did not toll the statutory limitations period. *See Monroe v. Trustees of the Cal. State Colls.,* 6 Cal.3d 399, 99 Cal.Rptr. 129, 491 P.2d 1105, 1110 (1971) (stating "litigants who suffered injury at the hands of the government prior to [the abolition of sovereign immunity] would be barred from recovery unless their suits had been 'filed within the ordinary limitations periods provided for tort actions' "); *Leasoff v. Commonwealth,* 59 Pa. Cmwlth. 45, 428 A.2d 783, 784 (1981) (rejecting argument that "Commonwealth's prior immunity . . . toll[ed] the statute of limitations"). The plaintiffs make no argument to the contrary.

partially abrogated the immunity of the State for its torts. *See id.; Harden v. State,* 434 N.W.2d 881, 883 (Iowa 1989) ("The Iowa Tort Claims Act ... acts as a limited waiver of sovereign immunity."). The abrogation was not without its limits, however. It is clear from an examination of the act that the legislature did not intend to authorize suit against the State for any and all of its torts whenever committed. In defining the "claims" that fell within the scope of the immunity waiver, the legislature expressly stated that "only such claims accruing on or after January 1, 1963" were included. 1965 Iowa Acts ch. 79, § 2 (codified at Iowa Code § 25A.1(5) (1966)). This retroactivity provision was supplemented by a statute of limitations requiring that suit be filed "within two (2) years after such claim accrued or prior to July 1, 1967, whichever is later." *Id.* § 13 (codified at Iowa Code § 25A.13 (1966)). Applying proper rules of statutory construction to these provisions, I find the conclusion inescapable that the legislature did *not* intend to incorporate a discovery rule in the State Tort Claims Act in 1965. Therefore, the act did not purport to revive stale claims based on conduct predating January 1, 1963.

1. *Principles guiding proper analysis of retroactivity provision.* It is helpful at the outset to review pertinent rules of statutory interpretation so a proper focus can be maintained in analyzing the meaning of this statute. The polestar in interpreting the act is the legislature's intent. *State v. Dann,* 591 N.W.2d 635, 638 (Iowa 1999). As common sense would suggest, in determining legislative intent, the court "focuses attention on circumstances and events *at the time when a bill was enacted.*" 2B Norman J. Singer, *Statutes and Statutory Construction* § 49:01, at 8 (6th ed.2000 rev.) (emphasis added) [hereinafter *"Statutes and Statutory Construction"*]; *accord Dann,* 591 N.W.2d at 638 (stating "that, in construing a statute, the

court must be mindful of the state of the law *when it was enacted*" (emphasis added)); *Brady v. City of Dubuque,* 495 N.W.2d 701, 705 (Iowa 1993) (stating "*contemporary* circumstances" may be used as an aid to interpretation (emphasis added)); 73 Am.Jur.2d *Statutes* § 117, at 326 (2001) ("Statutes are to be read in the light of attendant conditions at the time of their enactment."); Iowa Code § 4.6(2) (2003) (instructing court to consider "[t]he circumstances under which the statute was enacted" in determining legislative intent). Accordingly, we "tak[e] into consideration the historical framework" of the statute, 2B *Statutes and Statutory Construction* § 49:01, at 8–9, and look to the state of the law existing at the time the statute was adopted, *Davis v. State,* 682 N.W.2d 58, 61 (Iowa 2004).

One aspect of the historical context of a statute is the accepted, contemporaneous meaning of words or phrases used in the statute. Thus, we have long held that "[t]he legislature is presumed to know the usual meaning ascribed by the courts to language and to intend that meaning unless the context shows otherwise." *State v. Shafranek,* 576 N.W.2d 115, 118 (Iowa 1998) (citing cases); *accord Hagen v. Texaco Ref. & Mkting., Inc.,* 526 N.W.2d 531, 537 (Iowa 1995); 2B *Statutes and Statutory Construction* § 50:03, at 150 ("The interpretation of well-defined words or phrases in the common law carries over to statutes dealing with the same or similar subject matter."); 73 Am.Jur.2d *Statutes* § 124, at 334 (stating "words in a statute are assumed to bear their ordinary, *contemporary,* common meaning" (emphasis added)).

Similarly, the legislature has specifically provided that a court, in interpreting ambiguous statutory provisions, should consider "[t]he common law or former statutory provisions, including laws upon the

same or similar subjects." Iowa Code § 4.1(4) (2003). These resources are pertinent because "[i]t is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter." 2B *Statutes and Statutory Construction* § 51:02, at 176; *accord State v. Kellogg*, 542 N.W.2d 514, 516 (Iowa 1996) (in interpreting statutory language court may consider similar statutes); 73 Am.Jur.2d *Statutes* § 150, at 353 ("[I]f a special meaning is attached to certain words in a prior act, there is a presumption of some force that the legislature intended that they should have the same signification when used in a subsequent act in relation to the same subject matter."). In addition, "the interpretation of a doubtful statute may be influenced by language of other statutes which are not specifically related, but which apply to similar persons, things, or relationships." 2B *Statutes and Statutory Construction* § 53:03, at 327–38; *accord Hagen*, 526 N.W.2d at 536 (applying case law interpretation of same language used in other, unrelated statutes). Having established that the state of the law, including court decisions interpreting similar language in related and unrelated statutes, is a useful aid in interpreting a statute, I now examine whether these resources reveal a meaning for the word "accruing," as used by the legislature in 1965.

2. *Contemporaneous context of retroactivity provision.* The majority states, "Precedent clearly holds a claim does not 'accrue' until the plaintiff 'discovers the injury or by the exercise of reasonable diligence should have discovered it.'" (Citation omitted). While this statement may be true in 2005, in 1965 precedent clearly held that a claim accrued at the time of injury. *See, e.g., Eppling v. Seuntjens*, 254 Iowa 396, 117 N.W.2d 820, 825 (Iowa 1962); *Beerman v. Beerman*, 225 Iowa 48, 51–52, 279 N.W. 449, 451–52 (1938); *Ogg v. Robb*, 181 Iowa 145, 156, 162 N.W. 217, 221

(1917); *Gustin v. County of Jefferson*, 15 Iowa 158, 160 (1863). Moreover, prior to 1965, this court had expressly and consistently stated that "ignorance of the existence of a cause of action at law does not prevent the statute from running unless there has been an intentional fraudulent concealment." *McGrath*, 224 Iowa at 223, 275 N.W. at 471; *accord Lougee v. Reed*, 133 Iowa 48, 50–51, 110 N.W. 165, 166 (1907); *see Chrischilles v. Griswold*, 260 Iowa 453, 461, 150 N.W.2d 94, 100 (1967) (noting rule up to that point in time— 1967—was that "ignorance of a right does not prevent the running of the statute of limitations"), *superseded by statute as stated in Langner v. Simpson*, 533 N.W.2d 511, 516 (Iowa 1995).

Prior to 1965, this court had *never* applied the discovery rule outside the legislatively authorized area of equitable fraud, mistake, and trespass, *see* Iowa Code § 614.4 (1962), and the statutory discovery rule had been strictly limited to the types of claims expressly listed in the statute. *See, e.g., Cole v. Hartford Accident & Indem. Co.*, 242 Iowa 416, 426, 46 N.W.2d 811, 817 (1951). It was not until this court's *1967* decision in *Chrischilles* that the discovery rule was applied outside statutory parameters. Clearly, this case, which *changed* the law and which was decided *after* legislative enactment of the retroactivity or sunrise provision, is not authoritative on the issue of the legislature's intent two years earlier. *See Gannon v. Chicago, Milwaukee, St. Paul & Pac. Ry.*, 22 Ill.2d 305, 175 N.E.2d 785, 792 (1961) (refusing to ascribe intent to legislature that was contrary to legal principles followed at time statute was enacted).

This court's refusal to apply the discovery rule outside section 614.4 prior to 1967 is even more significant when one examines the statutes of limitation that were being interpreted by our decisions. From

its initial adoption, the general statute of limitations found at Iowa Code section 614.1 has focused on the *accrual* of the cause of action: "Actions may be brought within the times herein limited, respectively after their causes *accrue*, and not afterwards, except when otherwise specially declared...." Iowa Code § 614.1 (emphasis added). Prior to our 1967 *Chrischilles* decision, this court had always interpreted the word "accrue," as used in the limitations statute, to refer to the time of injury, regardless of when the injury or claim was discovered by the injured party. *See, e.g., Cole,* 242 Iowa at 426, 46 N.W.2d at 817; *McGrath,* 224 Iowa at 223, 275 N.W. at 470–71; *Lougee,* 133 Iowa at 50–51, 110 N.W. at 166.

When one focuses on the proper timeframe, it is readily discernible that the word "accruing" had a well-defined meaning in 1965: it meant when the injury occurred. Consequently, if we remain true to our longstanding principles of statutory interpretation, we must conclude that when the legislature stated that only "claims accruing on or after January 1, 1963" were included in the waiver of immunity, the legislature did not intend to revive claims for torts committed prior to January 1, 1963.

In fact, that was exactly the interpretation this court gave to the statute one year after its enactment. In *Graham v. Worthington,* 259 Iowa 845, 146 N.W.2d 626 (Iowa 1966), we considered the validity of a constitutional challenge to the State Tort Claims Act. One ground addressed by the court was directed to the provision stating that "'claim' includes only such claims accruing on or after January 1, 1963." *Graham,* 259 Iowa at 855, 146 N.W.2d at 634. The challenger claimed this provision violated a constitutional prohibition against the payment of public money for a purpose not provided for by pre-existing law. *Id.* at 855–56, 146 N.W.2d at 634. We stated:

By its terms the Iowa Tort Claims Act became effective March 30, 1965. This then means claims which may have *accrued* anytime within two years and three months before its effective date are embraced within the terms of the enactment.

The question now presented is whether disbursement of funds *for torts committed* prior to the effective date of the Act would constitute payment of money, the subject matter of which was not provided for by any previously enacted law.

*Id.* at 855–56, 146 N.W.2d at 634 (emphasis added). Clearly this court equated accrual of the claim with the date the tort was committed.

Later in the same opinion, we considered "whether chapter 25A operates equally upon all within the same class and with uniformity." *Id.* at 863, 146 N.W.2d at 638. We said:

[The law] accords to all *damaged or injured* by the tort of an officer, agent or employee of the state *subsequent to January 1, 1963,* a prescribed method and means by which to secure a judicial or quasi-judicial determination of their grievances, denying this right to no person within that designated general field or classification.

*Id.* at 864, 146 N.W.2d at 639. Again, this court was undoubtedly interpreting the language "accruing on or after January 1, 1963," to refer to damage or injury occurring subsequent to January 1, 1963. Moreover, this interpretation of the statute was not mere dicta. To the contrary, our court was required to identify the legislative classifications in order to assess the validity of the plaintiff's constitutional challenge under the Iowa Constitution's Equality Clause. *See Grovijohn v. Virjon, Inc.,* 643 N.W.2d 200, 204 (Iowa 2002) ("The first step of an equal protection

claim is to identify the classes of similarly situated plaintiffs singled out for differential treatment.").

It is significant that this interpretation of the language at issue was made only one year after the statute was adopted. Certainly this court's understanding of the well-defined meaning of the statutory term "accruing" would have been much clearer in 1966, than it is now after having been muddied by the intervening years of applying the discovery rule in ever-growing contexts. *See generally Wiltgen v. United States*, 813 F.Supp. 1387, 1392, (N.D.Iowa 1992) (stating "it often happens that those cases closer in time to the enactment of a statute or the handing down of a precedent are in a better position to assess its true character"); *accord State ex rel. McElhinney v. All–Iowa Agri. Ass'n*, 242 Iowa 860, 868, 48 N.W.2d 281, 285 (1951) (presuming "meaning given [the statute] by contemporary usage" to be the true meaning).

In summary, when the legislature abrogated sovereign immunity in 1965, it did so only for torts that were *committed* on or after January 1, 1963. Therefore, the plaintiffs' claims, based on torts committed in 1939, remained barred notwithstanding the enactment of the Iowa Tort Claims Act. That brings me to the 1969 repeal of the retroactivity provision.

E. *Repeal of retroactivity provision.* Four years after the State Tort Claims Act was adopted, the legislature amended the statute in two relevant particulars. First, the general assembly deleted the words "or prior to July 1, 1967, whichever is later" in the statute of limitations, with the explanation that this amendment "deletes unnecessary and confusing language." S.F. 376, 63rd G.A., 1st Sess. Explanation (Iowa 1969); *see also* 1969 Iowa Acts ch. 81, § 4(2). At the same time, the legislature deleted the sentence in the definition of "claim" that stated " 'claim' includes only such claims accruing on or after Janu-

ary 1, 1963." 1969 Iowa Acts ch. 81, § 2. The senate bill approved by the general assembly explained that the deleted sentence "is no longer necessary in view of the statute of limitations set forth in section 25A.13." S.F. 376, 63rd G.A., 1st Sess. Explanation (Iowa 1969).

These legislative explanations—that the amendments were mere housekeeping to rid the statute of unnecessary provisions— are entirely consistent with my interpretation of the statute. By 1969 when these provisions were deleted, all claims accruing/occurring after January 1963 that had not already been pursued in court were barred. That conclusion is required by the statutory provision stating that "[e]very claim against the state permitted under this Act shall be *forever barred,* unless [filed within two years or prior to July 1, 1967]." Thus, there was no reason for the legislature to continue to address claims within this transition period: these claims had either been pursued in court or they were "forever barred."

More importantly, the repeal of the retroactivity provision did not affect claims based on torts committed before January 1, 1963, such as those of the plaintiffs. First, the 1969 housekeeping amendments evidence no intent to effect a substantive change in the law, namely, to revive previously barred claims. *Cf. Frideres,* 540 N.W.2d at 266 (stating extended statute of limitations will not " 'revive actions previously barred under a prior statute in the absence of *express* legislative intent' " (emphasis added) (citation omitted)). Consequently, the mere repeal of the retroactivity provision did not revive the plaintiffs' claims. As I have already explained, the retroactivity provision did not revive claims based on pre–1963 torts, and so its repeal did not affect such claims either.

In addition, at the time the retroactivity provision was repealed, the State had a

right to assert the statute of limitations as a defense because the applicable limitations period had expired and the plaintiffs' barred claims had not been revived by the act. There is nothing in the bill deleting the retroactivity provision to indicate that the legislature intended to alter accrued rights by its action, and therefore, the State's right to its statute-of-limitations defense was not affected by the repeal of the retroactivity provision. *See D.M. ex rel. C.H. v. Nat'l Sch. Bus Serv., Inc.,* 305 Ill.App.3d 735, 238 Ill.Dec. 950, 713 N.E.2d 196, 203 (1999) (refusing to " 'breathe life into [a] previously barred claim' " brought against a governmental subdivision, stating " ' "[a] vested ground of defense is as fully protected from being cut off or destroyed by an act of the legislature as is a vested cause of action" ' " (citations omitted)). *See generally* 2 *Statutes and Statutory Construction* § 41:9, at 455 (6th ed.2001 rev.) ("[A] statute may not apply retroactively to revive a cause of action already barred by the statute of limitations").

In conclusion, the contemporaneous law and our rules of statutory interpretation unequivocally establish that the legislature intended that claims based on events occurring before January 1, 1963 were excluded from the act and forever barred. Therefore, the plaintiffs' claims were not revived by the State Tort Claims Act. In addition, contrary to the majority's characterization of the State's position, it is not necessary to resurrect the repealed retroactivity provision in order to conclude the State has a viable statute-of-limitations defense. The retroactivity provision did not breathe life into the plaintiffs' time-barred claims when it was enacted, and the plaintiffs' claims remained just as dead after the retroactivity provision was repealed as they were before.

F. *Application of* Frideres *principles to present case.* I now return to the real issue in this case. That issue rests on the following principle: notwithstanding the general rule that the statute of limitations in effect when suit is filed governs, " ' "if plaintiff's suit was barred by the running of a statute of limitations prior to the extension of the limitation period, the subsequent statute cannot revive defendant's liability." ' " *Frideres,* 540 N.W.2d at 266 (citations omitted). I am convinced the plaintiffs' claims were barred decades ago; they were not revived by the provisions of the original State Tort Claims Act or amendments to that act; and they cannot be revived by this court's application of the current statute of limitations and its discovery rule. *See Frideres,* 540 N.W.2d at 267 ("Claims barred by preexisting statutes of limitation are not revived by either [the common law or the statutory] discovery rule."); *cf. Leasoff,* 428 A.2d at 784 (stating retroactive application of prior decision abolishing sovereign immunity did not revive claims already barred by statute of limitations).

G. *Conclusion.* When I apply the governing legal principles to this case, I can reach only one conclusion: the plaintiffs' claims are time barred. I cannot understand why the majority believes these well-established principles regarding statutory interpretation and the revival of barred actions have no application to the suit before us. I suspect it is because they believe the debate in this case concerns "the king's liability for his past indiscretions," which they claim "still simmers within our court today." I, for one, have no quarrel with the legislature's decision to waive the State's immunity. My quarrel is with the majority's refusal to apply the law just because they disagree with the policy decisions made by prior legislatures and prior justices on this court. Under those prior statutes and prior decisions, the plaintiffs' claims were barred. I dissent from the majority's unprincipled revival of those claims. I would reverse the district

court's ruling and dismiss the plaintiffs' claims on statute-of-limitations grounds.

CARTER, J., joins this dissent.

CADY, J. (dissenting).

I respectfully dissent. The resolution of this case turns on the intent of our legislature, which the majority circumvents by applying legal principles developed after the enactment of the statute from which the intent must be derived. *See City of Cedar Rapids v. James Props., Inc.,* 701 N.W.2d 673, 675 (Iowa 2005) ("In interpreting a statute, our goal is to determine the legislature's intent when it enacted the statute." (citing *State v. Tague,* 676 N.W.2d 197, 201 (Iowa 2004))); *accord City of Fairfield v. Harper Drilling Co.,* 692 N.W.2d 681, 684 (Iowa 2005); *see also Worth County Friends of Agric. v. Worth County,* 688 N.W.2d 257, 264 (Iowa 2004) ("Our primary concern in interpreting a statute is to determine and effectuate the legislature's intent." (citing *Grundmeyer v. Weyerhaeuser Co.,* 649 N.W.2d 744, 750 (Iowa 2002))). Our legislature adopted a statute in 1965 that permitted some tort claims to be filed against the State, and our task is to decide if our legislature at the time intended this statute to include claims based on conduct that occurred decades prior to the statutory enactment. *See Barad v. Jefferson County,* 178 N.W.2d 376, 378 (Iowa 1970) ("The question of retrospectivity is one of legislative intent." (citing *Schmitt v. Jenkins Truck Lines, Inc.,* 260 Iowa 556, 560, 149 N.W.2d 789, 791 (1967))). This case is not, as the majority discusses, about an old debate over the waiver of sovereign immunity, or whether the appellees' claim falls within the statute of limitations, or even how the appellees' claim would be treated if the injury had occurred today. The issue is plain and simple—does the statute waiving partial immunity apply retroactively to include the type of claim presented in this

case? The answer is equally clear—our legislature never intended the statute to include the claim brought by the appellees.

Generally, if a statute creates substantive law, it is applied only prospectively. *State ex rel. Turner v. Limbrecht,* 246 N.W.2d 330, 332 (Iowa 1976). If the statute is remedial in nature, it is applied both prospectively and retroactively. *Id.* Ultimately, however, "[t]he question of retrospectivity is one of legislative intent." *Barad,* 178 N.W.2d at 378 (citing *Schmitt,* 260 Iowa at 560, 149 N.W.2d at 791). Courts search for this intent from the language of the statute, its purpose, and the goals sought to be accomplished. *Cox v. State,* 686 N.W.2d 209, 213 (Iowa 2004) (citing *State v. Albrecht,* 657 N.W.2d 474, 479 (Iowa 2003)).

Yet, we do not need to focus on the rules of law developed to ascertain the retroactive scope of the statute because our legislature specifically included a provision in the statute addressing its retroactive effect. *Christy v. Miulli,* 692 N.W.2d 694, 705 (Iowa 2005) ("If the statutory language is plain and the meaning clear, we do not search for legislative intent beyond the express terms of the statute." (Citation and quotation marks omitted.)). In defining the meaning of a "claim" under the Act in 1965, the legislature specifically addressed the retroactive nature of the statute by only including within its coverage "claims accruing on or after January 1, 1963." 1965 Iowa Acts ch. 79, § 2(5). Thus, the legislature clearly sought to implement a limited retroactive scheme, and the issue becomes whether the legislature intended its retroactive scheme to apply to claims that occurred after January 1, 1963, or to claims discovered after January 1, 1963. This issue turns on the interpretation of the statute, and it is essential to turn to the language of the Act to reach a resolution. *See Cox,* 686 N.W.2d at 213 (noting

we begin with the language of the provision at issue).

The statute initially defined a "claim" to mean:

> any claim against the state of Iowa for money only, on account of damage to or loss of property or on account of personal injury or death, caused by the negligent or wrongful act or omission of any employee of the state while acting within the scope of his office or employment, under circumstances where the state, if a private person, would be liable to the claimant for such damage, loss, injury, or death.

1965 Iowa Acts ch. 79, § 2(5). This section then concluded the definition with the important language at the heart of this dispute: "However, a 'claim' includes only such claims accruing on or after January 1, 1963." *Id.* Significantly, the legislature also established a statute-of-limitations period in the Act. This section provided:

> Every claim against the state permitted under this chapter shall be forever barred, unless within two (2) years after such claim accrued or prior to July 1, 1967, whichever is later, the claim is made in writing to the state appeal board under this Act and a suit is begun under this Act.

*Id.* § 13.

There is no dispute that the legislature desired to place a limitation on the retroactive effect of the statute by defining viable claims with reference to the beginning date of January 1, 1963. This date was two years and three months before the effective date of the statute, March 30, 1965. Thus, the retroactive effect of the statute was two years and three months. The statute-of-limitation provision included in the Act then required any claim to be brought within two years or prior to July 1, 1967, whichever was later. *Id.* Therefore, under the statute, all claims within the retroactive period of time were re-

quired to be brought before July 1, 1967, and claims that "accrued" after needed to be brought within two years.

The need for interpretation is illustrated by the positions taken by the parties. The State claims the January 1, 1963 date was a "sunrise" provision that barred all claims that occurred before that date. The appellees claim it only barred claims discovered prior to July 1, 1963. Both positions hinge on the intended meaning of the word "accrued." The dispute turns on the shifting manner in which the law has used the term to express its principles. This transfiguration explains much of the debate today, which requires its meaning to be explored in a historical context.

The term "accrue" is largely embedded in the law governing limitations on actions. In this context, a general rule emerged from our early cases that a cause of action accrued when the injured party had a right to institute and maintain a lawsuit. *Chrischilles v. Griswold,* 260 Iowa 453, 461, 150 N.W.2d 94, 99 (1967); *Dean v. Iowa–Des Moines Nat'l Bank & Trust Co.,* 227 Iowa 1239, 1242, 281 N.W. 714, 717 (1938). In addition, our legislature has long used the term "accrue" to refer to the point when the statute of limitations begins to run on a cause of action. *See* Iowa Code § 614.1 (2003) ("Actions may be brought within the times [specified] after their causes accrue, and not afterwards, except when otherwise specially declared . . . ."). Thus, it was generally understood from the earliest development of our law that an action accrued at the time the elements of the cause of action occurred. *Ogg v. Robb,* 181 Iowa 145, 152–53, 162 N.W. 217, 220–21 (1917). This meant a cause of action for negligence accrued from the time of the act and injury, not the discovery of the injury. *Id.; see also Schnebly v. Baker,* 217 N.W.2d 708, 721 (Iowa 1974) ("The general rule in

tort cases is that the period of limitation commences when the tort is committed." (citing 51 Am.Jur.2d *Limitation of Actions* § 146, at 715; 54 C.J.S. *Limitations of Actions* § 205, at 216)). This view was also the early view of the law outside Iowa. *See* Restatement (Second) of Torts § 899 cmt. e, at 444 (1969) ("Under the early interpretation of the English statutes of limitations, knowledge by the injured person of the existence of the tort was immaterial, and it is still true in many of the states that, in the absence of fraud or concealment of the cause of action, the statutory period runs from the time the tort was committed although the injured person has no knowledge or reason to know of it."). Thus, the term "accrue" has always meant "[t]o come into existence as an enforceable claim," *Black's Law Dictionary* 22 (8th ed.2004), but the law attached a special meaning to it by using it with reference to a legal principle.

The case of *Ogg v. Robb* illustrates this predominant view of our law dating back nearly a century. In *Ogg*, the plaintiff suffered burns on his arms as a result of x-rays taken by a doctor after he broke his wrist. *Ogg*, 181 Iowa at 147, 162 N.W. at 218. This event took place in 1901. *Id.* In 1912, the plaintiff developed cancer in his arm, resulting in amputation. *Id.* In 1915, he brought a negligence action against the doctor alleging the x-rays caused the cancer. *Id.*, 162 N.W. at 219. After finding no evidence of fraudulent concealment of the tort by the physician, the court concluded the cause of action accrued at the time of the burn injury in 1901, and the action was therefore barred by the statute of limitations. *Id.* at 156, 162 N.W. at 220. The court emphasized that ignorance of the tort or the injury would not toll the statute of limitations until discovery. *Id.* at 156, 162 N.W. at 220-21.

At this time, the only exception to this rule involved cases in which the tortfeasor fraudulently concealed the cause of action from the injured person. *See id.* at 152, 162 N.W. at 219 (" '[T]he statute does not begin to run, where a cause of action is fraudulently concealed, until the facts are discovered by plaintiff.' " (quoting *Cole v. Charles City Nat'l Bank*, 114 Iowa 632, 635, 87 N.W. 671, 672 (1901))); *Dist. Township of Boomer v. French*, 40 Iowa 601, 603 (1875) ("[W]e find the rule to have been very well settled, under the English statute of limitations, that where the party against whom a cause of action existed in favor of another, by fraud or actual fraudulent concealment prevented such other from obtaining knowledge thereof, the statute would only commence to run from the time the right of action was discovered, or might, by the use of diligence, have been discovered." (Citations omitted.)). In that event, it was generally recognized that a cause of action was not considered to accrue until the facts were discovered. *Ogg*, 181 Iowa at 150, 162 N.W. at 219; Restatement (Second) of Torts § 899 cmt. e, at 444.

Around the same time as the law pertaining to the accrual of a cause of action was taking its early shape, our legislature began to carve its own exceptions to the application of the statute of limitations for specific types of cases. In 1860, the legislature first declared that actions for fraud would not accrue until "discovery of the fraud by the party aggrieved." Iowa Code § 2741 (1860). The legislature later added actions for trespass to property to the exception, *see* 1868 Iowa Acts ch. 167, § 9, and, still later, in 1873, added actions grounded on mistake, *see* Iowa Code § 2530 (1873). *See Beerman v. Beerman*, 225 Iowa 48, 51–52, 279 N.W. 449, 450–51 (1938) (tracing the evolution of what was then Iowa Code section 11010 (1935)). The statutory exceptions for actions based on fraud, mistake, and trespass to land

remain today and are now codified in section 614.4.

Clearly, the legislature understood that a cause of action accrued even without knowledge of the injury under the general statute of limitations, and it sought to eliminate this harsh and "undiscriminating application of the statute of limitations" in three types of cases by creating the exceptions. *Id.* at 52, 279 N.W. at 451. In *Beerman,* we considered the legislation that added claims for mistake within the statutory exception to the rule that a claim accrued despite ignorance of the injury:

> And it seems quite clear that this relief was intended for the one specific purpose of helping out of a dilemma those litigants who, had they appeared in court under the old law, could not have saved their rights by showing that they had not discovered the mistake within the fixed period of the statute of limitations. To such litigants, and none others, the Legislature granted relief. To litigants generally no extension of time was mentioned or intended.

*Id.* Thus, it is abundantly clear our legislature understood the general rule was that a cause of action accrued under a statute of limitations when the injury occurred. Absent a defendant's fraudulent concealment of a cause of action from a plaintiff, this court rejected the argument that a cause of action should not accrue until the plaintiff discovered the injury, *see Ogg,* 181 Iowa at 150–51, 162 N.W. at 220–21, and our legislature modified this approach by adopting only three limited exceptions, *see* Iowa Code § 11010 (1935). The state of the law then remained constant well into the twentieth century.

While this state seemed content with the law governing the accrual of a cause of action well into the twentieth century, the law in other states began to apply the "discovery rule" to the general statute of limitations. Restatement (Second) of Torts § 899, cmt. e, at 445. Under the discovery rule, actions were deemed not to accrue until the plaintiff discovered the injury or should have discovered it in the exercise of reasonable diligence. *Id.; see, e.g., Urie v. Thompson,* 337 U.S. 163, 169–70, 69 S.Ct. 1018, 1024–25, 93 L.Ed. 1282, 1292 (1949); *Ricciuti v. Voltarc Tubes, Inc.,* 277 F.2d 809, 812–13 (2d Cir.1960); *Polzin v. Nat'l Co-op. Refinery Ass'n,* 175 Kan. 531, 266 P.2d 293, 297 (1954); *Johnson v. Caldwell,* 371 Mich. 368, 123 N.W.2d 785, 791 (1963); *Dryden v. Omaha Steel Works,* 148 Neb. 1, 26 N.W.2d 293, 295 (1947); *Rothman v. Silber,* 83 N.J.Super. 192, 199 A.2d 86, 92 (1964); *Foley v. Pittsburgh–Des Moines Co.,* 363 Pa. 1, 68 A.2d 517, 535 (1949); *Ginkowski v. Ginkowski,* 28 Wis.2d 530, 137 N.W.2d 403, 406 (1965). However, the first mention of this movement to broadly apply the discovery rule to tort actions did not surface in Iowa until our decision in *Chrischilles v. Griswold,* 260 Iowa 453, 150 N.W.2d 94 (1967), in 1967.

In *Chrischilles,* we reiterated that our longstanding approach to the accrual of a cause of action did not recognize ignorance of a right of action to "prevent the running of the statute of limitations." *Chrischilles,* 260 Iowa at 461, 150 N.W.2d at 100 (citing *Campbell v. Long,* 20 Iowa 382, 387 (1866); *Garrett v. Olford,* 152 Iowa 265, 269, 132 N.W. 379, 381 (1911)). However, we observed a trend in other states around the nation to adopt the discovery rule in a broad number of cases, including actions for malpractice. *Id.* at 462, 150 N.W.2d at 100 (citations omitted). This trend convinced us to adopt the discovery rule in actions based on negligence. *See id.* at 463, 150 N.W.2d at 100 ("We now believe the better rule to be that a cause of action based on negligence does not accrue until plaintiff has in fact discovered that he has suffered injury or by the exercise of reasonable diligence should have discovered it

and are persuaded the rationale of the discovery doctrine should be adopted."). Thus, outside the venerable statutory exceptions and the fraudulent concealment of a cause of action, this was the first time we considered the accrual of a tort action in relationship to the discovery of the injury.

Today, of course, we are committed to the principle that a statute of limitations in civil cases begins to run when the plaintiff acquires actual or constructive knowledge of the injury. *Rieff v. Evans,* 630 N.W.2d 278, 291 (Iowa 2001) (citing *State v. Wilson,* 573 N.W.2d 248, 253 (Iowa 1998)). In other words, today, a claim does not accrue until the plaintiff has actual or constructive knowledge of the injury. *Id.* (citing *Woodroffe v. Hasenclever,* 540 N.W.2d 45, 47 (Iowa 1995)). Clearly, the word "accrue" has taken on a new legal meaning. Yet, while the transformation to the discovery rule began with *Chrischilles,* what followed was not a sweeping, overwhelming movement to apply the discovery rule in all cases. *See Schlote v. Dawson,* 676 N.W.2d 187, 190 (Iowa 2004) (noting *Chrischilles* adopted the discovery rule as an exception to the general rule). More than a generation passed following *Chrischilles* before a majority of this court fully adopted and applied the discovery rule to actions, as in this case, brought under the Iowa Tort Claims Act. *See Vachon v. State,* 514 N.W.2d 442, 445 (Iowa 1994) (holding the discovery rule applies to all claims under the Act); *see also Callahan v. State,* 464 N.W.2d 268, 273 (Iowa 1990) (applying discovery rule to Iowa Tort Claims Act). *But see id.* at 274 (Andreasen, J., concurring) (opining "[a]pplication of the discovery rule should be determined by the court on a case-by-case basis"); *id.* (Schultz, J., dissenting) (opining the discovery rule should only be applied "to remove statutory bars in those instances when equitable considerations demand it"). Under these circumstances, it is un-

likely, if not a stretch of the imagination, our legislature would have meant to use the definition of accrue in 1965 that we use today. Moreover, the discovery-rule movement was driven by judicial pronouncements. Outside the three long-standing statutory exceptions, and a recent statutory exception for victims of childhood sexual abuse, *see* Iowa Code § 614.8A (2003) ("An action for damages for injury suffered as a result of sexual abuse which occurred when the injured person was a child, but not discovered until after the injured person is of the age of majority, shall be brought within four years from the time of discovery by the injured party of both the injury and the causal relationship between the injury and the sexual abuse."), the movement to the adoption of the discovery rule has been accomplished by judicial decisions.

Although the disputed statute in this case is not a statute of limitations, the historical background of the concept of accrual within the context of statutes of limitations is important to the proper determination of what the legislature meant when it used the term "accrues" in the definition of "claim" in 1965 when the Iowa Tort Claims Act was enacted. *See* 2B Norman J. Singer, *Statutes and Statutory Construction* § 49:01, at 8–9 (2000 rev.) [hereinafter Singer] (stating courts must consider the historical framework of a statute); *see also Doe v. Ray,* 251 N.W.2d 496, 501 (Iowa 1977) ("[I]n construing a statute we must be mindful of the state of the law when it was enacted . . . ." (citing *Egan v. Naylor,* 208 N.W.2d 915, 918 (Iowa 1973))). We cannot give a term in a statute a definition it acquired only after the legislature enacted the statute, because the legislature cannot have attributed a definition to a term if it had not yet acquired it. *See City of Fairfield v. Harper Drilling Co.,* 692 N.W.2d 681, 684 (Iowa 2005) ("Our goal in interpreting a statute is to deter-

mine the legislature's intent when it enacted the statute." (citing *Tague,* 676 N.W.2d at 201)).

Our legislature is presumed to know the usual judicial meaning of language and to intend the language it uses in its statutes to have that meaning. *State v. Shafranek,* 576 N.W.2d 115, 118 (Iowa 1998) (citing *State v. Jones,* 298 N.W.2d 296, 298 (Iowa 1980); *State v. Wilson,* 287 N.W.2d 587, 589 (Iowa 1980)); *accord* 2B Singer § 50:03, at 150 ("The interpretation of well-defined words and phrases in the common law carries over to statutes dealing with the same or similar subject matter."). Moreover, our legislature has specifically provided that "[t]he common law or former statutory provisions, including laws upon the same or similar subjects" should be considered in interpreting statutes. Iowa Code § 4.1(4) (2003). Such resources are important because "[i]t is assumed that whenever the legislature enacts a provision it has in mind previous statutes relating to the same subject matter." 2B Singer § 51:02, at 176; *accord State v. Kellogg,* 542 N.W.2d 514, 516 (Iowa 1996) (stating that in interpreting statutory language, courts may consider similar statutes).

At the time the Iowa Tort Claims Act was enacted in 1965, this court had consistently used the term "accrue" within the context of the statute of limitations to refer to the time of injury, without regard to the time the injury was discovered. *See, e.g., Ogg,* 181 Iowa at 150–51, 162 N.W. at 220–21. Thus, it must be presumed our legislature understood this approach at the time it enacted the Iowa Tort Claims Act in 1965, and if it was contrary to its intent, would have enacted legislation to change our approach by using different language or providing different instructions. *Cf. State ex rel. Palmer v. Bd. of Supervisors,* 365 N.W.2d 35, 37 (Iowa 1985) (" '[A]n amendment substituting a new term or phrase for one previously construed indicates that the judicial or executive construction of the former term or phrase did not correspond with the legislative intent and a different interpretation should be given the new term or phrase.' " (Citations omitted.)). Of course, the legislature has done this before by enacting the three statutory exceptions over the years. *See* Iowa Code § 614.4 (excepting actions based on fraud, mistake, and trespass from general rule that cause of action accrues when its elements occur, not when the injury is discovered). The presence of these exceptions is important because it confirms that our legislature understood our judicial approach to the accrual of a cause of action and knew it was necessary to establish specific exceptions to change that approach in those cases where our approach did not represent its intent. Instead, in the Iowa Tort Claims Act, the legislature made no statutory provision to contravene our longstanding approach of holding accrual occurs notwithstanding the plaintiff's ignorance of the claim. *Compare* Iowa Code § 11010 (1935) ("In actions for relief on the ground of fraud or mistake, and those for trespass to property, the cause of action shall not be deemed to have accrued until the fraud, mistake, or trespass complained of shall have been discovered by the party aggrieved."), *with id.* § 25A.2(5) (1966) (stating " 'claim' includes only such claims accruing on or after January 1, 1963," and stating claim must be brought "within two years after such claim accrued or prior to July 1, 1967," but not containing any specific provision as to when a claim shall or shall not be deemed to have accrued).

I recognize that by 1965, other states around the nation were beginning to apply the discovery rule to the accrual of a cause of action in the context of the statute of limitations. *See Chrischilles,* 260 Iowa at 462, 150 N.W.2d at 100 (citing cases from

other jurisdictions applying the discovery rule). Yet, it cannot be presumed our legislature would have intended to adopt such a trend in Iowa in place of our long-standing contrary view, without some specific expression of its intent. Generally, it cannot be presumed that a legislature had statutes of a different state in mind when enacting a statute. 2B Singer § 51:06, at 263. Similarly, it cannot be presumed that a legislature had judicial decisions relating to such foreign statutes in mind when enacting a statute. *Id.* § 51:06, at 263–64. Consequently, consistent with our long-standing principles of statutory interpretation, any principled analysis must conclude that when our legislature stated in 1965 that only "claims accruing on or after January 1, 1963" were included in the waiver of immunity, the legislature meant to bar liability for torts committed prior to January 1, 1963. There was no intent for the discovery rule to apply in the event a party was not aware that a tort had been committed or was unaware of the resulting injury. This concept had not yet been recognized in Iowa outside the specific exceptions and the doctrine of fraudulent concealment, and there was no indication the legislature would have wanted to apply the discovery rule beyond these exceptions.[8]

Of course, the retroactivity provision was repealed in 1969, and since that time, the only mechanism under the Act to govern the time limitation for the filing of a claim was the two-year statute of limitations under section 25A.13. The majority asserts that the repeal means the statute must be treated as if it never existed, and any intent the provision may have expressed when enacted is no longer valid. This view, of course, permits the majority to use the statute of limitations as a means to resolve the dispute freed from all the history behind the statute that unmistakably expresses an intent to exclude appellees' claim. Yet, the repeal of a statute does not simply erase the slate. Instead, our role is to discern the intent of the legislature behind the repeal, not assume it has a single meaning under all circumstances. The act of repealing a statute has no value in the analysis without determining the intent of the legislature behind the repeal.

Any claim that our legislature intended to capture plaintiff's claim by repealing the retroactive provision in 1969 cannot withstand scrutiny. Such an argument is not only speculative, but it is based upon the faulty premise that our legislature would have read *Chrischilles* to broadly trans-

---

8. The three statutory exceptions are not helpful to appellees in this case. The only statutory exception that could possibly be applicable to the claims recited in the petition in this case is the fraud exception, as appellees asserted a claim of fraudulent misrepresentation. *See* Iowa Code § 614.4 (providing that cause of action for fraud does not accrue until the plaintiff discovers the fraud). *But see Koppes v. Pearson*, 384 N.W.2d 381, 386 (Iowa 1986) ("Our court has narrowly construed the word 'fraud' in sections 614.1(4) and 614.4. We have refused to apply those *statutes of limitation to actions for money damages;* their use has been limited to fraud actions brought in equity which call for equitable relief." (Citations omitted.)). Moreover, the Act specifically excludes "misrepre-

sentation" and "deceit" from the scope of its coverage. Iowa Code § 669.14(4). Additionally, appellees did not argue before the district court or on appeal that fraudulent concealment prevented their claims from accruing. *See Koppes*, 384 N.W.2d at 386 ("If fraudulent concealment is established, the statute of limitations does not commence to run until the plaintiff discovers, or in the exercise of reasonable care should discover, the basis for the cause of action." (Citations omitted)). *But see Christy v. Miulli*, 692 N.W.2d 694, 701 (Iowa 2005) ("[F]raudulent concealment does not affect the running of the statutory limitations period; rather, it estops a defendant from raising a statute-of-limitations defense." (citing 51 Am.Jur.2d *Limitation of Actions* § 380, at 688 (2000)).

form the concept of accrual to incorporate the discovery rule, was aware of the trend in other states to broadly apply the discovery rule prior to *Chrischilles,* and intended to apply the discovery rule in 1969. Such propositions find no support under any legitimate analysis.

As mentioned, *Chrischilles* was not a broad pronouncement, and we did not extend the discovery rule to the statute of limitations under the Iowa Tort Claims Act until 1994. *See Vachon,* 514 N.W.2d at 445 (holding the discovery rule applies to all claims under the Act). Without some clear legislative expression, it cannot be discerned that our legislature intended to take the lead in our development of the legal principles surrounding the accrual of a cause of action, instead of following its past action of developing exceptions. Moreover, had the legislature intended to take the lead in making this important change in the law, it would not have done so in the ambiguous, indirect manner of repealing of the retroactivity provision. Additionally, the only written legislative history shows the legislature repealed the retroactive provision because it was "no longer necessary," which provides no real guidance either way. *See* Explanation of S.F. 376, 63d Gen. Assemb., Reg. Sess. (Iowa 1969) ("[T]he proposed amendment also deleted the last sentence of section 25A.2(5) which is no longer necessary in view of the statute of limitations set forth in section 25A.13"). Our legislature meticulously carved out specific exceptions when it wanted to adopt the discovery rule, and I do not think the legislature would have adopted the discovery rule to the retroactive provision under the Iowa Tort Claims Act without making a similar clear expression of intent.

In partially abrogating sovereign immunity in 1965, our legislature did not intend to apply the discovery rule to the retroactivity provision of the Act. Thus, torts committed by the State before 1963, even though the injury was undiscovered, were not "claims" subject to the Act. *See* Iowa Code § 24A.2(5) ("However, 'claim' includes only such claims accruing on or after January 1, 1963."). Even though we eventually applied the discovery rule to the statute of limitations under the Act in 1994, this event did not bring claims that were previously excluded from the Act's coverage by virtue of the retroactivity provision back within the scope of the Act. *Cf. Frideres v. Schiltz,* 540 N.W.2d 261, 267 (Iowa 1995) (a new statute of limitations does not revive claims that have been barred under the statute of limitations in existence prior to the new statute). We cannot simply apply today's law as if there was no history of the definition of claim under the Act. Furthermore, the repeal of a statute does not affect rights that have accrued, including the right of the State to assert sovereign immunity as a defense to a claim. *See* Iowa Code § 4.1(1) (1966). Torts committed prior to 1963 are not covered under the Act and remain forever barred. They were barred at the time the immunity statute was enacted, and cannot be resurrected by means of a statute of limitations, or the repeal of a statute.

I would conclude the legislature never intended claims for torts occurring before 1963 to be subject to the Iowa Tort Claims Act. The only way to conclude otherwise is to essentially ignore the critical issue of the retroactive application of the statute, which the majority has done. By doing this, the majority also ignores our legislature's intent and has engaged in the very legislating it expressly disavows.

If the 1965 statute were enacted today, I would have no quarrel with the majority in this case. While our role to ascertain legislative intent would remain the same, our approach to the law today would clearly signal a legislative intent to include appel-

lees' claim. Yet, the decision to include or exclude claims that predated the Iowa Tort Claims Act is one of public policy, reserved for the legislature. And that question was decided forty years ago by our legislature by a specific statute. The majority now renews the debate and decides the policy question differently than our legislature did. It does so by using new law, reflecting new policies our legislature could not, under any stretch of the imagination, have had in mind. It is not the role of a court to make a decision that appears fair in a particular case under today's standards if to do so undermines those timeless, foundational principles responsible for the institutional strength and respect for the judiciary. Courts can only define justice within the principles that define their limited role in government.

CARTER, J., joins this dissent.